*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FISHER/KNOX, Minors.

UNPUBLISHED
November 7, 2019

No. 348223
Ingham Circuit Court
Family Division
LC No. 17-001534-NA

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Respondent-mother's oldest child was placed in foster care when she was incarcerated and could offer no alternative placement for him. Her second son was born while she was imprisoned and he joined his brother in foster care. The Department of Health and Human Services (DHHS) eventually sought termination of respondent's parental rights because she would remain incarcerated until at least 2023, had no means to care for her children even indirectly, and had been unable to demonstrate improvement through services. Respondent does not challenge the statutory grounds underlying the termination decision, but contends that termination of her parental rights was not in her children's best interests. We affirm.

## I. BACKGROUND

Respondent was arrested in November 2017 on felony charges related to a hit-and-run accident and remained incarcerated throughout these proceedings. She was eventually convicted and sentenced, with a minimum release date in November 2023. Respondent could suggest no relative to care for 21-month-old KF upon her arrest and the DHHS stepped in. Respondent later suggested that KF be placed with her aunt or her sister, but neither situation was appropriate. Respondent gave birth to her second son, BK, while incarcerated. He was placed with his older brother in nonrelative foster care.

Respondent's incarceration was not her sole obstacle to reunification. Respondent admitted that she had used marijuana during both her pregnancies, relying on the substance as an alternative treatment for bipolar disorder. Minimal services were available to her in prison, but respondent participated as much as possible. Respondent attended parenting classes and worked toward earning her GED. She participated in courses related to substance abuse, anger

-1-

management, and healing and trauma. Respondent recorded herself reading books for the children. Although the prison had a parenting-time program, the DHHS determined that such visits would not be in the children's best interests. However, the foster parent facilitated visits between the children and their maternal relatives.

Ultimately, the court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist with no reasonable likelihood of rectification within a reasonable time), (h) ("[t]he parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years" and the parent cannot provide proper care and custody for the child), and (j) (reasonable likelihood of harm to the child if returned to his parent's care). In evaluating these statutory factors, the court noted that respondent had not truly acknowledged her substance abuse problem. Moreover, the court could not assess whether respondent had benefitted from services due to her continued incarceration.

The court further determined that termination of respondent's parental rights would be in the young children's best interests. The court found that BK had no bond with his mother as he had been in care since birth and that respondent's bond with KF had been "very diminished" by the extended separation since KF was a very young age. The court reiterated that respondent had been unable to demonstrate an improvement in her parenting ability despite her participation in parenting classes as she remained in prison throughout these proceedings. Respondent's decision to use marijuana during her pregnancies, however, reflected poorly on her parenting skills. Respondent suggested that the court consider a guardianship for the children rather than terminating her rights. Given the children's young ages, the court determined that a guardianship would not provide the necessary "permanency, finality and stability." The foster parent also provided "safety, love, covers their emotional and physical needs and provides a very nurturing environment."

## II. DISCUSSION

As noted, respondent challenges only the circuit court's best-interest determination. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The court should weigh all the evidence available to it in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). And we review the court's factual findings in this regard for clear error. *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014).

Factors relevant to the best-interest determination include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality," as well as the advantages of the foster home over the child's home with the parent. *Olive/Metts*, 297 Mich App at 41-42 (quotation marks and citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich

App 701, 714; 846 NW2d 61 (2014). The likelihood that the children could return to the parent's home "in the foreseeable future" is also relevant. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). The trial court must address the possibility of placement with a relative, which weighs against termination. *In re Gonzales/Martinez Minors*, 310 Mich App 426, 434; 871 NW2d 868 (2015). Ultimately, "the focus at the best-interest stage [is] on the child, not the parent." *Moss*, 301 Mich App at 87.

The circuit court did not clearly err in finding that the evidence preponderated in favor of termination. Although respondent loves her children, the children share no bond with her. KF has been in care since he was 21 months old, and BK has been in care since birth. KF does not remember living with his mother and does not ask about her. The only connection the children have with their mother is through the recorded books she sends.

The children have also thrived in their foster placement. The children are being raised together and view their foster parent as their mother. The foster parent allows the children contact with their maternal relatives. Moreover, she is willing to adopt and provide the children with a permanent, stable home.

Respondent, on the other hand, has been unable to demonstrate any improvement in her parenting skills as she has remained incarcerated throughout these proceedings. Respondent used marijuana during both her pregnancies. Although respondent has participated in substance abuse classes while in prison, she has never acknowledged her substance abuse problem or the effect of her substance use during pregnancy on the children.

Respondent argues that the circuit court erroneously concluded that a guardianship would not provide the children with permanency, finality, and stability. However, the court was not required to consider a guardianship in lieu of terminating parental rights. MCL 712A.19a(8)(a) provides that "[t]he court is not required to order the agency to initiate proceedings to terminate parental rights if . . . the child is being cared for by relatives." KF and BK were not in a relative placement; they were being cared for by a nonrelative foster parent. Accordingly, there was no statutory basis for seeking guardianship over termination. Moreover, this Court has previously affirmed a circuit court's determination that termination was in a child's best interests when the child had been in foster care since infancy, had no relationship with his or her parent, and the parent would be unable to achieve reunification for two to three more years. See *In re Fried*, 266 Mich App 535, 543-544; 702 NW2d 192 (2005). Here, KF has been in care since he was 21 months old and BK since birth. During this placement, the children had no contact with their mother due to her incarceration. And even at this point, respondent will be imprisoned for a minimum of four more years. The circuit court correctly concluded that keeping the children in limbo for such an extended period of time would not be in their best interests.

We affirm.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher