*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* OWENS, Minors.

UNPUBLISHED
August 4, 2022

No. 359042
Wayne Circuit Court
Family Division
LC No. 2018-001053-NA

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, SBO and JAO. The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction), and (j) (reasonable likelihood that child will be harmed if returned to the parent's home).[1] On appeal, respondent argues that the trial court erred by concluding that there was clear and convincing evidence establishing the statutory grounds for termination and that termination was in the best interests of the children. We affirm.

## I. BACKGROUND

This case arose after respondent abandoned SBO at a friend's house in July 2018. Thereafter SBO was taken into protective custody.[2] At that time, JAO had not yet been born. In August 2018, the trial court took jurisdiction over SBO following an adjudication trial. Broadly speaking, the trial court determined jurisdiction was proper because respondent had abandoned SBO, lacked stable housing, and "failed to provide when able to do so, support, education, medical,

---

[1] The trial court also terminated the rights of SBO's unidentified father and the rights of JAO's unidentified father. They are not parties to this appeal.

[2] We note that respondent mother was a minor when the petition was filed in 2018, and for the bulk of the proceedings.

and other necessary care for the child . . . ." in addition to concerns regarding respondent's supervision of SBO while SBO was in respondent's care.

In April 2019, while SBO was still in petitioner's custody, respondent gave birth to JAO. A little over a year after JAO's birth, respondent was terminated from the mother and baby residential program where she and JAO had been residing. In August 2020, petitioner petitioned the court to remove JAO from respondent's care, which the court granted. An adjudication trial was held in January 2021, at which respondent admitted that she was unable to provide proper care and custody for JAO and that she had not yet completed her case service plan related to the petition for SBO. Respondent testified that she had been hospitalized for suicidal ideations while JAO was in her care. Respondent did not have stable housing, her only source of income was Social Security Income, and she was not currently in therapy. Based on respondent's admissions, the trial court exercised jurisdiction over JAO. The court found that when she had the means, respondent failed to provide support, education, medical, other necessary care for the child. The court also determined that jurisdiction was proper due to respondent's untreated mental health issues, and inadequate housing. In addition to complying with the existing case service plan, the court ordered respondent to follow all of the recommendations from her mental health provider including taking medication. The goal for both SBO and JAO was reunification.

In April 2021, petitioner filed an amended supplemental permanent custody petition asking the trial court to terminate respondent's parental rights to both SBO and JAO. Petitioner alleged that respondent failed to comply with her case service plan. Petitioner asserted that respondent still did not have suitable housing, and failed to complete and benefit from services provided, including parenting classes, infant mental health (IMH) services, and individual therapy. Further, respondent missed multiple parenting time visits since February 2019. After a termination hearing in September 2021, the trial court found that MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) had been established by clear and convincing evidence, and that termination was in SBO's and JAO's best interests. This appeal followed.

## II. STANDARD OF REVIEW

A trial court may only terminate a parent's parental rights upon finding "by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id.*; MCR 3.997(K). We also review for clear error a trial court's decision that termination is in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 81 (quotation marks and citation omitted). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## III. STATUTORY GROUNDS

Respondent challenges the trial court's conclusion that MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) were established by clear and convincing evidence.[3] We disagree.

As an initial matter, respondent argues that the trial court erred by admitting hearsay evidence regarding respondent's alleged substance abuse during the termination hearing. We perceive no error. When termination of parental rights is not being sought at the initial dispositional hearing or on the basis of circumstances that are new or different from those that led the court to originally take jurisdiction, "[t]he Michigan Rules of Evidence do not apply, other than those with respect to privileges . . . ." MCR 3.977(H)(2). Therefore, the Michigan Rules of Evidence did not apply to respondent's termination hearing, and the court could consider hearsay evidence. Nonetheless, nothing in the record that suggests that the trial court considered evidence about respondent's alleged substance abuse issue when rendering its decision.

MCL 712A.19b(3)(c)(*i*) allows for termination of parental rights if (1) more than 182 days have elapsed since the issuance of the initial dispositional order, (2) the court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist," and (3) "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*); *In re Jackisch/Stamm-Jackisch*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357001); slip op at 5.

It is undisputed that more than 182 days had elapsed since the initial dispositional orders were issued. The children were originally brought into care for, in relevant part, improper care and inadequate housing. Those issues were never satisfactorily resolved, and the evidence indicated no reasonable likelihood that they would be rectified within a reasonable time.

The lack of stable and suitable housing was one of the primary reasons that the trial court assumed jurisdiction of SBO and JAO. The record clearly shows that this condition persisted throughout this case. In June 2018, respondent, herself a minor, ran away from her grandmother's home with SBO. Respondent moved into a friend's house. In July 2018, respondent left her friend's house, and abandoned SBO. After petitioner located respondent in October 2018, she began living at the Vista Maria Home for Girls (Vista Maria). In March 2019, respondent moved into the residence of a mother and baby program. After living at the program's residence for over a year, respondent was asked to leave after the program's staff determined that respondent was noncompliant with program rules. She also engaged in "unsafe behaviors," including refusing to stay at the residence overnight. In August 2020, respondent lived with fictive kin for two weeks before running away because she disliked their curfew rules. In October 2021, respondent reported that she was living with her boyfriend. Respondent refused to allow her foster care worker, Megan Jones, to inspect the home. According to respondent, the boyfriend did not want Jones to do so. In February 2021, respondent was hospitalized after her boyfriend attacked her by pouring bleach

---

[3] On appeal, petitioner concedes that MCL 712A.19b(3)(c)(*ii*) was inapplicable. Nonetheless, because only one ground is necessary for termination of parental rights, the error was harmless. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

down her throat. After the hospital discharged respondent, she went to live in a homeless shelter. But a few months later, the homeless shelter directed respondent to leave. According to Jones, respondent then disappeared between May and July 2021. At the time of the termination hearing, respondent reported living with her grandmother. However, respondent never allowed Jones to inspect this home for suitability, despite having two opportunities to do so.

There was no indication in the trial court record that there was a reasonable likelihood that respondent would find safe, suitable housing in a reasonable amount of time considering the ages of SBO and JAO. In the more than three years that this case was active, respondent was unable to maintain suitable housing despite petitioner's assistance. Jones testified that she provided respondent with "multiple housing resources" and that respondent had two court appointed special advocates who assisted her with applying for government-subsidized housing. Jones testified that, in July 2021, Jones had provided respondent with a packet of housing resources. Those included contacts for respondent to reach out to. Jones identified potential apartment buildings that respondent would qualify for. Jones further offered to contact the apartments on behalf of respondent, but respondent rejected Jones' assistance.

Additionally, in the more than three years that this case was active, respondent failed to improve her parenting skills. Respondent participated in parenting classes while she lived at Vista Maria and at the mother and baby residential program. However, despite attending parenting classes for over a year, respondent did not show improvement. Jones testified that during visitation, respondent was often distracted or claimed she was too tired to interact with SBO and JAO. Jones reported that respondent would look at her phone, stare into space, or request to remain sitting and just observe SBO and JAO. Jones also testified that respondent often cried during visits with SBO and JAO, and would become overwhelmed. Jones further reported that respondent had been inconsistent during visits with SBO and JAO. Respondent missed approximately one-third of her scheduled visits with SBO and JAO. Jones indicated that there were gaps of time in which respondent would disappear and stop visiting SBO and JAO. Respondent told Jones that one of the reasons she did not visit during these periods was because it was too emotional for her to see JAO after JAO had been removed from her care. Additionally, although respondent participated in more than three years of services, she never progressed to unsupervised parenting time.

Respondent also repeatedly failed to follow up on referrals for services. After the mother and baby program asked respondent to leave, Jones made four additional referrals for parenting classes. However, these referrals lapsed because respondent did not respond to calls from the parenting class instructor. Similarly, after Jones referred respondent for IMH services in February 2021, respondent did not participate because she failed to attend an intake appointment. When Jones made a second referral for IMH services, respondent never followed up with the contact. While respondent eventually signed up with IMH services from April 2021 through the first week of July 2021, she missed multiple sessions.

The trial court recognized the unique barriers that respondent faced as a young mother who had been a temporary ward of the court during the majority of the proceedings. However, the court found that respondent continued to be inconsistent with engaging in and benefiting from services, despite the numerous opportunities to do so for over three years. We perceive no error in this conclusion. Although respondent argues that the court failed to adequately consider the impact of the COVID-19 pandemic and her own special needs, she did not object to the case service plan

and fails to identify what services or additional accommodations should have been provided. Additionally, although respondent asserted that some conditions improved in the months before the termination hearing, "a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in conditions that led to adjudication." *In re Jackisch*, ___ Mich App at___, slip op at 4. On this record, the trial court did not clearly err by finding termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*). Because only one statutory ground for termination of a respondent's parental rights need be established, we need not address the additional grounds for termination. *In re Ellis*, 294 Mich App at 32.

## IV. BEST INTERESTS

Next, respondent argues that the trial court clearly erred by concluding that termination of respondent's parental rights was in the best interests of the children. We disagree.

"Even if the trial court finds that [the petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Sanborn*, 337 Mich App 252, 276; ___ NW2d ___ (2021) (quotation marks and citations omitted). "The focus at the best-interest stage has always been on the child, not the parent." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks, citation, and alteration omitted). Some factors the trial court may consider include:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, [] the advantages of a foster home over the parent's home . . . . the length of time the child was in care, the likelihood that the child could be returned to [their] parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 63-64 (quotation marks and citations omitted).]

The trial court may also consider "the child's age, inappropriate parenting techniques, . . . visitation history . . . the child's well-being in care, and the possibility of adoption." *In re Sanborn*, 337 Mich App at 277 (citations omitted).

The trial court primarily found that termination was in SBO's and JAO's best interests because respondent had not shown stability, consistency, nor commitment to providing a safe environment for the children. Although respondent argued that she shared a bond with the children, the record clearly supports the finding that whatever bond existed was clearly outweighed by the children's need for safety, permanency, and stability. The trial court also noted that respondent lacked the means to transport herself places—either by driving herself or using public transportation—and that respondent had failed to comply with and benefit from her case service plan despite many opportunities to do so.

Respondent never obtained suitable housing, stable employment, or showed that she benefited from parenting classes during the course of the proceedings. The record indicates that both children had spent a substantial part of their lives outside of respondent's care. As already discussed, respondent had a demonstrated history of running away or being removed unwillingly from homes. Respondent also willingly abandoned her children. Further, given respondent's lack of transportation and inability to use public transportation, the trial court reasonably inferred that respondent would have difficulty transporting SBO and JAO to things like doctor's appointments if they remained in her care. There was no indication that respondent would be able to rectify the problems in such time that the children could be returned to her in the foreseeable future. Further, Jones testified that the parenting time visits with respondent were very draining on the children and that the children did not display a bond with respondent. Specifically, the children "acted out and tried punching and scratching" during visits and tried to leave the room or building in an attempt to return to their foster parent. In the more than three years that this case was active following SBO's removal, respondent had been unable to achieve stable housing or to improve her parenting skills. Equally important, Jones indicated that SBO and JAO were currently in a stable, preadoptive home with foster parents whom SBO and JAO looked to as their parents.

The record showed that respondent lacked the ability to provide SBO and JAO with a safe and stable home environment. Respondent failed to benefit from parenting classes. SBO and JAO were currently living in a safe and stable environment. The bond between respondent and the children was outweighed by the children's need for stability and finality. This record supports the trial court's finding, by a preponderance of the evidence, that termination was in the best interests of the children.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett