*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COATS, Minors.

UNPUBLISHED
September 15, 2022

No. 359340
Gladwin Circuit Court
Family Division
LC No. 19-000080-NA

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Respondent-father[1] appeals as of right the order terminating his parental rights to DC, MC, and SJC[2] (collectively, "the children") under MCL 712A.19b(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arose after Child Protective Services (CPS) received several reports of improper supervision of the children by respondents. These included an allegation that two-year-old SJC was found walking alone in the middle of the road dressed in a nightgown and one flip flop. It was also alleged CO threw a shot glass at MC, severely cutting her face. Respondent-father was asleep at the time, and when alerted to MC's injury, he refused to get her immediate medical treatment. There was also an allegation of domestic violence in the children's presence. This resulted in a no-contact order between respondents.

The Department of Health and Human Services (DHHS) filed a petition seeking the trial court's jurisdiction over the children. The trial court assumed jurisdiction, but the children were

---

[1] Respondent-mother was a respondent in the trial court proceedings. The trial court terminated respondent-mother's parental rights to the children, but she is not a party to this appeal.

[2] Respondent-mother's other child, CO, was also involved at the beginning of this case. However, the trial court terminated jurisdiction over CO after CO turned 18 during the pendency of these proceedings.

allowed to remain in respondent-father's care. Respondent-father was ordered to participate in a treatment plan which included substance abuse treatment and random drug screens. He was also ordered to be employed and to maintain appropriate housing.

Respondent-father briefly complied with the treatment plan. However, DHHS learned respondent-father was abusing substances and was leaving the children home alone, sometimes for days. The children were removed from respondent-father's home and placed in foster care. Respondent-father did not participate in substance abuse treatment and he failed to complete most drug screens. Some of his completed drug screens were positive for illegal substances. Respondent-father was not employed and he was at risk of eviction. Respondents often violated their no-contact order between respondent-father and respondent-mother.

DHHS filed a petition to terminate respondent-father's parental rights after a hearing was held. The trial court found statutory grounds to terminate respondent-father's rights and that termination was in the children's best interests. This appeal followed.

## II. ANALYSIS

Respondent-father's brief in this appeal was extremely short[3] and unhelpful. It appears respondent-father challenges: (1) the reasonable efforts made by DHHS to reunite him with the children; (2) the trial court's finding of statutory grounds to terminate his parental rights; and

---

[3] Respondent-father's argument in its entirety states:

The father testified at the termination hearing and clearly articulated his love and affection for his children, as follows (p52 of transcript from 10/28/2021):

[Q.] The information I have indicates that you went to 95 out of 98 scheduled [parenting time] visits?

[A.] Absolutely.

[Q.] That's a very high compliance rate?

[A.] Yeah. It is.

[Q.] It indicates that you care a great deal about your children?

[A.] More than I can put into words.

Further, the respondent father testified that he still had a home for his children, and his income was sufficient to support his children. It is the position of the respondent father that he was not given enough opportunity to correct the deficiencies in his case. He believes that he is, and can prove himself to be, an excellent father to his children.

(3) the finding that termination was in the children's best interests. None of these arguments warrants reversal.

## A. STANDARD OF REVIEW

We review for clear error a trial court's determination regarding reasonable efforts. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "The clear error standard [also] controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted); MCR 3.997(K). "A decision qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App at 271 (quotation marks and citation omitted). This Court will defer to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis,* 294 Mich App 30, 33; 817 NW2d 111 (2011). "The interpretation and application of statutes and court rules are . . . reviewed de novo." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

## B. REASONABLE EFFORTS

In general, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

We disagree that DHHS failed to expend reasonable efforts to reunify the family. For example, DHHS connected respondent-father with treatment providers who offered programs for his substance abuse issues. Respondent-father either failed to participate or failed to benefit from these programs. DHHS referred respondent-father for individual counseling, which he did not complete. DHHS provided respondent-father with resources to address his housing instability, but respondent-father did not complete the paperwork. Respondent-father argues he was not afforded adequate opportunity to address his issues. The record demonstrates DHHS offered appropriate services to address his barriers to reunification, but respondent-father failed to benefit from these services.

## C. STATUTORY GROUNDS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. The

trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).

Termination of parental rights pursuant to MCL 712A.19b(3)(j) is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." The harm contemplated by the statute includes emotional and physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018) (quotation mark and citation omitted).

The trial court concluded that subsection (j) was met because the children would be harmed if returned to respondent's care. The trial court considered respondent-father's failure to comply with his service plan, specifically his failure to rectify his substance abuse issues, his housing instability, his employment issues, and his emotional instability throughout the case. Respondent-father was ordered to attend and benefit from parent education classes and participate in random drug testing, substance abuse services, and counseling. However, he either failed to participate in, or benefit from, these services. He also consistently tested positive for substances and refused to submit to drug screens.

Respondent-father's history of improper parental supervision further indicates that the children would be at risk of both emotional and physical harm if returned to his care. See *In re Hudson*, 294 Mich App at 268. Respondent-father failed to seek medical attention for MC's injury after CO threw a shot glass at her head; he engaged in domestic violence in front of the children; respondent-father allowed a number of strangers to visit the home, causing the children to feel unsafe; and respondent-father was suspected to be under the influence of substances during multiple parenting time visits. Because termination was proper under MCL 712A.19b(3)(j), we decline to consider the whether termination was proper under the remaining subsections. *In re Ellis*, 294 Mich App at 32.

## D.  BEST INTERESTS

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014). " 'The focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (brackets omitted), quoting *In re Moss*, 301 Mich App at 87. "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App at 733.

Whether termination is in a child's best interests requires a trial court to consider a number of factors, including:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, [] the advantages of a foster home over the parent's home . . . the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all,

and compliance with the case service plan. [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (quotation marks and citations omitted).]

"In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it." *Id*. at 63.

The trial court found termination was in the children's best interests because foster care was able to offer them more stability than respondent-father was willing or able to provide. DC and SJC were thriving in their placements and their respective foster parents indicated they could serve as permanent resources. Regarding MC, the trial court noted her behavioral difficulties, and found that the foster care system was able to provide her the medical and therapeutic care to address these concerns. Respondent-father's reliance on his consistent attendance at parenting time is not compelling. Indeed, there was evidence that respondent-father was under the influence during some parenting time visits and that he was often on his phone. He also brought random women to parenting time visits, one of whom was arrested during the visit. While respondent-father states that he loved and cared for the children, the record supports the trial court's finding that termination was in the children's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Noah P. Hood