*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re P. M. MILLER-CAIN, Minor.

UNPUBLISHED
December 22, 2022

No. 361246
Wayne Circuit Court
Family Division
LC No. 2021-000786-NA

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his daughter, PMC, under MCL 712A.19b(3)(b)(*i*), (g), and (j). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from respondent's sexual abuse of his then 11-year-old daughter. At trial, PMC testified that respondent started sexually abusing her in the summer of 2021. She stated that initially he would just watch pornographic videos while "playing" with his "private part" while she was in the room. Over time, his behavior escalated. She described that he would pull his penis from his shorts and rub it in front of her while directing her to "lick it," "suck it," and "rub it." At other times, "weird white stuff came out" of respondent's penis; he told her it was "cum" and that she should "eat it." Respondent also tried to touch her breasts, buttocks, and vagina. She recounted that he grabbed her breasts and squeezed them on two occasions and that he also touched her buttocks. He only "almost" touched her vagina. She described that the closest he came was when he touched the inside of her leg where the crease of her underwear was located. Respondent also chased her into her bedroom while attempting to touch her breasts. He entered the bathroom while she was showering and when she covered herself with a towel, he stated, "let me see." PMC told him to stop and that his behavior was "disgusting." He continued to sexually abuse her.

PMC told her step-mother about respondent viewing pornographic videos in front of her. According to PMC, her step-mother confronted respondent over the house's intercom, but believed him when he denied the allegation. Thereafter, respondent warned her that if she was a "tattletale" again he would ground her for a week. PMC eventually texted her mother that respondent was

sexually abusing her and that he was scaring her. After 7 or 8 days, her mother picked her up from respondent's home and she eventually filed a police report.

Petitioner, the Department of Health and Human Services, filed a petition seeking jurisdiction over PMC. With respect to respondent, petitioner sought termination of his parental rights. Petitioner only sought temporary custody as it related to PMC's mother. Following a combined adjudication trial and termination hearing, the court found statutory grounds for jurisdiction under MCL 712A.2(b)(1) and (b)(2), and it found by clear and convincing evidence that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), and (j). Thereafter, following a best-interests hearing, the court found by a preponderance of the evidence that termination of respondent's parental rights was in PMC's best interests. The court, therefore, entered an order terminating respondent's parental rights.[1]

## II. TERMINATION OF PARENTAL RIGHTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by terminating his parental rights. We review for clear error the court's finding that there are statutory grounds for termination and that termination of a respondent's parental rights is in the child's best interests. *In re A Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358502); slip op at 5-7. "The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

### B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), and (j). Termination is warranted under MCL 712A.19b(3)(b)(*i*) if the court finds by clear and convincing evidence:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

PMC's testimony supports the trial court's finding that she was sexually abused by respondent. She testified that he watched pornography while masturbating in her presence. While rubbing his penis, he told her to lick it, suck it, and rub it. She also stated that while rubbing his penis, respondent would stare at her and breathe hard. Respondent ejaculated in front of her, told

---

[1] Because the goal for PMC's mother was reunification, she was offered services aimed at reunification. PMC's mother is not a party to this appeal.

her that the white substance was cum, wiped it on the carpet near him, and told her to eat it. Another time he grabbed her hand and tried to make her touch his penis. He entered the bathroom while she was naked and when she tried to covered herself with a towel, he said "let me see." At times, he would try to touch her breasts, her buttocks, and her vagina while she was trying to get by him. He asked her to let him touch her breasts. And, although she testified that he did not touch her vagina, she stated that he did grab and squeeze her breasts on two occasions and that he touched her buttocks. Further, she described him as touching the upper, inside portion of her thigh, near the crease of her underwear.

PMC testified that the abuse was escalating. She explained that it first consisted of him playing with his penis while watching pornography. Then, as time went by, the other behaviors started, which included his attempts to touch her breasts, buttocks, and vagina; his demands that she rub, suck, or lick his penis while he masturbated in front of her; his commands that she "eat" his cum; his actions toward her while she was in the bathroom; and his actual touching of her buttocks and breasts. She recounted that she rejected his requests and told him that his behavior was disgusting, but that he did not stop. She testified that he was scaring her and that she did not feel safe. When PMC told her step-mother about the pornographic videos, her step-mother accepted his denial of improper behavior, and respondent threatened to punish her if she "tattled" in the future. Based on the foregoing, the court did not clearly err by finding that respondent sexually abused PMC and that there was a reasonable likelihood that she would suffer from additional sexual abuse in the foreseeable future if she were returned to his home. For the same reasons, termination of respondent's parental rights was also warranted under MCL 712A.19b(3)(g) and (j).

On appeal, respondent suggests the court's finding that there were statutory grounds to terminate his parental rights was erroneous because PMC testified that he never touched her inappropriately. Yet, during cross-examination, PMC testified as follows:

> *Q*. All right. And what did you see?
>
> *A*. I saw him watching videos on his tablet and he was playing with his own private part.
>
> *Q*. Okay. And on that day did he ever touch you inappropriately?
>
> *A*. No, but he tried to.
>
> *Q*. All right. Just answer my question please. We can get the other questions. Did he touch you inappropriately on that date?
>
> *A*. No.
>
> *Q*. All right. Is it, did he ever touch you inappropriately?
>
> *A*. Yes.

She then testified that respondent had touched her buttocks and almost touched her private part, which she clarified meant her vagina.[2] Later, when asked whether respondent had ever touched her breasts, she answered "yes." Respondent's reliance on testimony that he did not touch her inappropriately on one occasion and that he did not touch her vagina does not negate her testimony of improper touching on other occasions.

Respondent also suggests that PMC might have made up the allegations. He points to her testimony that she had lived with him since she was a baby and that respondent and her mother would argue with each other. Further, respondent testified that his relationship with PMC's mother was not good. At times, for instance, law enforcement was called because of issues arising with their exchange of PMC. Respondent points out that prior to the allegations, the custody arrangement between him and PMC's mother only allowed her visitation every other weekend, but that, now that the allegations had been made, PMC was with her mother "more." Respondent raised this argument during the combined adjudication trial and termination hearing. Based on the above testimony, the court could have found that PMC made up the allegations so that she could live with her mother instead of respondent. The court, however, did not make such findings. Instead, it found PMC's testimony that she had been sexually abused to be credible. That finding, as explained above, was not clearly erroneous.

The court also did not err by finding that termination of respondent's parental rights was in PMC's best interests. "The focus at the best-interest stage has always been on the child, not the parent." *In re A Atchley*, ___ Mich App at ___; slip op at 7. The court may consider the following when analyzing whether termination of the parent's parental rights is in the child's best interests:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include . . . the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all . . . . [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citations omitted).]

"Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court 'may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests,' " *In re A Atchley*, ___ Mich App at ___; slip op at 7, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

Respondent notes that PMC was placed with a relative and that, because her mother's parental rights were not terminated, she is not eligible for adoption. The court, however, considered the relative placement and determined that, in this case, termination was nevertheless warranted. The court stressed that PMC had been sexually abused by respondent. In his home, her well-being was jeopardized and she was not protected. The court found that, in light of the sexual abuse, respondent was unable to provide her with a permanent, safe, and stable

---

[2] PMC also testified that her breasts and her buttocks were "private parts." However, she specifically stated that he touched her breasts and buttocks, but not her vagina. The trial court was free to credit her testimony, notwithstanding that she was impeached regarding her vocabulary.

environment. Indeed, PMC testified that she did not feel safe in respondent's care and that she did not want to return to him. She was happy and safe in her relative placement and her needs were being met. On these facts, the trial court did not clearly err by finding that termination of respondent's parental rights was in PMC's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan