# STATE OF MICHIGAN

# COURT OF APPEALS

In re PAYNE/PUMPHREY/FORTSON, Minors.

FOR PUBLICATION
June 11, 2015
9:00 a.m.

No. 324813
Calhoun Circuit Court
Family Division
LC No. 09-003732-NA

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

GADOLA, J.

This case implicates the evidentiary standards required to terminate parental rights under the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq.*, and the Michigan court rules. Respondent-mother, A. Stenman, appeals as of right from the trial court's second order terminating her parental rights to her four minor children following a remand from this Court. See *In re Payne/Pumphrey/Fortson*, unpublished opinion of the Court of Appeals, issued September 18, 2014 (Docket Nos. 318105 & 318163). We affirm the trial court's order in part, reverse in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stenman has a lengthy history with the Department of Human Services (DHS) dating back to 2009, involving allegations of physical abuse, physical neglect, improper supervision, mental instability, and substance abuse. The trial court initially terminated Stenman's parental rights to her minor children, AP, DP, KP, and DF, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) on September 5, 2013. Stenman appealed that termination order as of right, and in *In re Payne/Pumphrey/Fortson*, unpub op at 3, this Court affirmed the trial court's order in part, reversed in part, and remanded for further proceedings. Subsequently, on November 6, 2014, the trial court conducted an additional termination hearing as instructed by this Court. That same day, the trial court issued an order affirming its original order terminating Stenman's parental rights to each of her minor children.[1]

---

[1] The trial court also terminated the parental rights of the father of AP and DP on September 5, 2013, and affirmed that termination order on November 6, 2014. The father of AP and DP did

-1-

## A. STENMAN'S FIRST APPEAL

In Stenman's first appeal, she argued that the lower court erred in terminating her parental rights because the court failed to apply the correct evidentiary standard under ICWA with respect to her two Indian children, DP and AP, and failed to render a finding that termination was in her children's best interests. *In re Payne/Pumphrey/Fortson*, unpub op at 1-3. This Court concluded that DP and AP were Indian children under ICWA, but that "the trial court did not apply the heightened 'beyond a reasonable doubt' evidentiary standard of proof at the termination hearing as required under ICWA." *Id.* at 2. The Court further noted that "although a representative of DP and AP's Indian tribe testified at the termination hearing, the witness was never qualified as an expert and, importantly, the witness did not testify that respondents' 'continued custody of' DP and AP was 'likely to result in serious emotional or physical damage to the' Indian children." *Id.*, quoting 25 USC 1912(f). Accordingly, the Court reversed the trial court's termination order regarding DP and AP and remanded for further proceedings. *Id.*

Regarding KP and DF, Stenman's two non-Indian children, the Court determined that the trial court did not clearly err in finding that MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) were proven by clear and convincing evidence. *Id.* at 3. However, the Court agreed that "the trial court failed to articulate a best interests finding regarding KP and DF at the termination hearing or in its subsequent termination orders." *Id.* Therefore, the Court remanded the case for the trial court to articulate its findings of fact and conclusions of law regarding the best interests of KP and DF on the record or in writing. *Id.*

## B. LOWER COURT PROCEEDINGS ON REMAND

On November 6, 2014, the trial court held an additional termination hearing in this matter. Caseworker Kristina Burch testified that she still believed Stenman's parental rights to all four children should be terminated. Burch explained that over the course of the several years Stenman's children were in protective custody, Stenman did not demonstrate a benefit from the services provided to her. Burch said that given the children's ages, the length of time they had been in care, and the lack of benefit shown by Stenman, returning the children to her custody would present a serious risk of harm to the children.

Christopher Hillert, a child welfare worker for the Red Cliff Band of Lake Superior Chippewa, was qualified as an expert regarding the customs, family organization, and child-rearing practices of AP and DP's Indian tribe. Hillert testified that DHS made active efforts to reunify the family, and he could not identify any additional services that could have been provided to Stenman during the course of the proceedings. However, Hillert opposed terminating Stenman's parental rights because it was generally against the tribe's practice to support termination. When asked whether he believed returning AP or DP to Stenman's care would present a serious risk of harm to either child, Hillert stated his position in the following exchange:

---

not file an appeal as of right from the trial court's November 6, 2014, order; thus, Stenman is the only respondent participating in this current appeal.

*Q.* Alright. Let me ask you a specific question, Mr. Hillert. Do you feel, either yes or no, that the continued custody of the children by the parent and custodian would likely result in serious emotional or physical damage to either one or both of the children?

*A.* No, I do not.

*Q.* Alright. And as it relates to both of the children, sir, why do you feel that way?

*A.* I feel that [Stenman] has completed everything that has been placed in front of her by the Department of Human Services. She continues to pursue her children, would like to visit with them more often and move towards reunification. I believe that [Stenman] wants to work towards getting her children back and the Department has not allowed her an opportunity.

Following additional proofs and closing arguments, the trial court issued a ruling on the record. First, the trial court found that Hillert was properly qualified as an expert witness under ICWA. The trial court, quoting 25 USC 1912(f), acknowledged that the evidentiary standard for terminating Stenman's parental rights to AP and DP required "a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Stenman argued that the standard of proof required for the Indian children was not met because the only expert witness to testify expressly opined that Stenman's custody of AP and DP was unlikely to result in serious emotional or physical damage to the children. In response to Stenman's argument, the trial court stated the following:

That does not, in this Court's mind, mean that if a qualified expert witness being a qualified expert under the Indian Child Welfare Act testifies that they do not think there is any serious harm, that that ends the discussion. The statute specifically says that it is evidence that includes testimony of [a] qualified expert witness and does not specify that the Court must otherwise discard any other evidence in the case in regard to whether or not there is a serious emotional or physical damage that's likely to result to the child. So, the Court takes into account all the things that are presented to it, including the testimony of Mr. Hillert, in this case, as to whether continued custody of the children . . . would likely [] result in serious emotional or physical damage to the child.

. . . There is, in this Court's opinion, and still is, despite Mr. Hillert's testimony, evidence and I think it is evidence beyond a reasonable doubt, that the return of the children is likely and was likely to result in serious emotional or physical damage to the children, those two children.

The trial court also found that terminating Stenman's parental rights was in KP's and DF's best interests. The court noted that the children were benefitting from their current placements, and that Stenman had not demonstrated an ability to benefit from the services provided to her

throughout the proceedings. Accordingly, the trial court once again terminated Stenman's parental rights to all four children.

## II. EVIDENTIARY STANDARD UNDER ICWA

### A. STANDARD OF REVIEW

"Issues involving the application and interpretation of ICWA are questions of law that are reviewed de novo." *In re Morris*, 491 Mich 81, 97; 815 NW2d 62 (2012). We review a trial court's factual findings underlying the application of legal issues for clear error. *Id.* A decision is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

### B. PRINCIPLES OF STATUTORY INTERPRETATION

When interpreting statutes, our primary goal is to discern and give effect to the intent of the Legislature. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). If statutory language is unambiguous, courts must honor the legislative intent clearly indicated in the language and "[n]o further construction is required or permitted." *Western Mich Univ Bd of Control v Michigan*, 455 Mich 531, 538; 565 NW2d 828 (1997). In reviewing a statute's language, courts must "give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). When terms are undefined in a statute, courts should assign the terms their plain and ordinary meaning, and may consult a dictionary to accomplish this task. *Id.*

### C. ANALYSIS

Congress enacted ICWA in response to concerns over " 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " *In re Morris*, 491 Mich at 97, quoting *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 32; 109 S Ct 1597; 104 L Ed 2d 29 (1989). ICWA established "minimum Federal standards for the removal of Indian children from their families to protect the best interests of Indian children and to promote the stability and security of Indian tribes and their families." *In re Elliott*, 218 Mich App 196, 201; 554 NW2d 32 (1996), quoting 25 USC 1902 (internal quotation marks omitted). Pursuant to ICWA, proceedings involving the termination of parental rights to an Indian child require a dual burden of proof. *In re Elliott*, 218 Mich App at 209. That is, in addition to finding that at least one state statutory ground for termination was proven by clear and convincing evidence, the trial court must also make findings in compliance with ICWA before terminating parental rights. *Id.* at 209-210.

Subsection (f) of 25 USC 1912 governs the federal evidentiary standard necessary to terminate parental rights to an Indian child, and provides the following:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of

-4-

the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Both MIFPA and the Michigan court rules contain similar requirements. MCL 712B.15(4) states the following:

> No termination of parental rights may be ordered in a proceeding described in this section without a determination, supported by evidence beyond a reasonable doubt, including testimony of at least 1 qualified expert witness as described in section 17, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. [Footnote omitted.]

MCR 3.977(G)(2) provides that a court may not terminate a parent's rights over an Indian child unless "the court finds evidence beyond a reasonable doubt, including testimony of at least one qualified expert witness . . . [that] continued custody of the child by the parent or Indian custodian will likely result in serious emotional or physical damage to the child."

Stenman first argues that the "beyond a reasonable doubt" standard was not met in this case because only one expert witness testified, and 25 USC 1912(f) requires the "testimony of qualified expert witnesses." Stenman correctly notes that both MCL 712B.15(4) and MCR 3.977(G)(2) vary slightly from 25 USC 1912(f), inasmuch as they merely require the testimony of "at least one qualified expert witness." Stenman argues that to the extent Michigan authority conflicts with 25 USC 1912(f), the federal statute prevails, thus requiring more than one qualified expert witness to testify before a court may terminate her parental rights. However, this Court has repeatedly interpreted the term "witnesses" as used in 25 USC 1912 "to mean that only one 'qualified expert witness' need testify." *In re Elliott*, 218 Mich App at 207; see also *In re Kreft*, 148 Mich App 682, 690; 384 NW2d 843 (1986). Thus, 25 USC 1912(f) does not conflict with MCL 712B.15(4) and MCR 3.977(G)(2), and only one expert witness was required to testify in this case.

Stenman further contends that the trial court failed to comply with the "beyond a reasonable doubt" evidentiary standard because the only expert witness to testify at the termination hearing expressly opined that returning AP and DP to Stenman's care would *not* likely result in serious emotional or physical damage to either child. To terminate parental rights to an Indian child, 25 USC 1912(f), MCL 712B.15(4), and MCR 3.977(G)(2) each require that evidence beyond a reasonable doubt, *including* testimony of a qualified expert witness, must establish that the continued custody of the child by the parent will likely result in serious emotional or physical damage to the child. The term "including" is undefined in ICWA, MIFPA, and the Michigan court rules. The word "including" is neither a technical nor legal term, so consultation of a dictionary is appropriate to determine its plain and ordinary meaning within the context of the statute. *Koontz*, 466 Mich at 312. *Random House Webster's College Dictionary* (2000) defines "include" as "to contain or encompass as part of a whole." *Black's Law Dictionary* (10th ed) similarly defines "include" as "[t]o contain as part of something." Considering these definitions, we conclude that in order to terminate parental rights to an Indian child, a trial court's "beyond a reasonable doubt" finding must "contain" or "encompass"

testimony of a qualified expert witness who opines that continued custody of the Indian child by the parent will likely result in serious physical or emotional harm to the child.

To further support this interpretation, we point to this Court's recent decision in *In re McCarrick/Lamoreaux*, 307 Mich App 436; 861 NW2d 303 (2014). In that case, this Court interpreted 25 USC 1912(e) and MCL 712B.15(2), two different—but very similar—provisions of ICWA and MIFPA, which govern the evidentiary standards required to place an Indian child in protective custody. *Id.* at 464-466. Subsection (e) of 25 USC 1912 provides the following:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. [Emphasis added.]

Similarly, MCL 712B.15(2) provides that a trial court may only remove an Indian child "upon clear and convincing evidence, *that includes testimony of at least 1 expert witness* who has knowledge of child rearing practices of the Indian child's tribe, that . . . the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (Emphasis added).

In *In re McCarrick/Lamoreaux*, 307 Mich App at 439-440, DHS petitioned to remove Indian children from their mother's care because she was abusing drugs and alcohol in the home and allowing her children to do the same. At the removal hearing, Stacey O'Neil was qualified as an expert on the child-rearing practices of the children's tribe. *Id.* at 441. O'Neil provided an overview of the services offered to the mother and the success of those efforts, but she "did not testify about the possible damage to the children." *Id.* at 466. Despite the lack of expert testimony concerning the possibility of damage to the children, the trial court found that probable cause existed to assume jurisdiction over the children. *Id.* at 441-442.

On appeal, this Court concluded that the trial court failed to comply with the evidentiary standards of ICWA and MIFPA, and held the following:

> While it may appear obvious that drug use has the potential to damage children, ICWA and [MIFPA] require the trial court's determination of damage to include the testimony of a qualified expert witness. *Here, there was simply no testimony in that regard, much less testimony by O'Neil, the qualified expert witness*. We conclude that the trial court's determination regarding the damage to the children did not comply with ICWA or [MIFPA] because the trial court's determination of damage did not include the testimony of a qualified expert witness. [*In re McCarrick/Lamoreaux*, 307 Mich App at 466-467.]

Notably, in remanding the case for further proceedings, the Court instructed the trial court that if it could not "support its finding with testimony from a qualified expert witness at a hearing, it must return the children" to the mother's care. *Id.* at 469-470.

In this case, the trial court explicitly recognized that Hillert, the only expert witness at the termination hearing, did not support termination and specifically testified that returning AP and

DP to Stenman's care would *not* likely result in serious emotional or physical damage to either child. Nonetheless, considering the other evidence presented, the trial court determined that returning AP and DP to Stenman's care *would* result in such damage beyond a reasonable doubt. In so doing, the trial court essentially disregarded Hillert's testimony, contrary to the plain language of 25 USC 1912(f), MCL 712B.15(4), and MCR 3.977(G)(2). Accordingly, we conclude that the trial court failed to adhere to the requirements of ICWA and its Michigan counterparts, and remand for further proceedings with respect to AP and DP.[2]

### III. BEST-INTEREST ANALYSIS

Stenman also argues that the lower court erred in concluding that termination of her parental rights was in KP's and DF's best interests. "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

As a preliminary matter, the trial court properly established at least one of the statutory grounds for terminating Stenman's parental rights to KP and DF. This Court recognized as much in its previous opinion, wherein it affirmed the trial court's findings pertaining to KP and DF that MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) were all proven by clear and convincing evidence. *In re Payne/Pumphrey/Fortson*, unpub op at 3. Under the law of the case doctrine, this Court's previous legal determination on this issue remains intact. *Bennett v Bennett*, 197 Mich App 497, 499; 496 NW2d 353 (1992). Therefore, the only question we must now address is whether termination of Stenman's parental rights was in KP's and DF's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . . ." MCL 712A.19b(5). "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it. *In re Trejo*, 462 Mich at 356. Courts may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include the length of time the child was in care, the likelihood that "the child could be returned to her

---

[2] We sympathize with the trial court's frustration that the testimony of a single expert witness endorsed by AP and DP's tribe, which had an announced policy against terminating parental rights in nearly all circumstances, could essentially trump the totality of other evidence presented at the termination hearing. However, a plain reading of the language of the applicable provisions in ICWA, MIFPA, and the Michigan court rules persuades us that expert testimony is required to support a finding that a parent's continued custody would likely result in serious emotional or physical damage to an Indian child. Absent this requirement, the trial court's findings regarding AP and DP were likely otherwise supported by sufficient evidence at the termination hearing.

parents' home within the foreseeable future, if at all," and compliance with the case service plan. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In this case, the trial court did not clearly err in finding that termination of Stenman's parental rights was in KP's and DF's best interests. At the time of the first termination hearing, KP was approximately 12 years old and had been under the care and supervision of DHS since 2009. Likewise, DF, who was nearly one year old at the initial termination hearing, had been under the care and supervision of DHS his entire life. Both children were in need of permanency and stability, and both children were benefitting from the care at their current placements. During these lengthy proceedings, Stenman displayed a continuing inability to rectify the barriers that led to adjudication, despite DHS offering her a plethora of services. Once her parental rights were terminated the first time, those services stopped and Stenman participated only minimally in voluntary services. Thus, at the time of the second termination hearing, it remained unlikely that the children could be returned to Stenman's care in the foreseeable future, if at all. Given the length of time these proceedings lasted, and the minimal likelihood that Stenman could rectify her barriers to reunification within a reasonable time, any bond Stenman had with KP and DF was outweighed by the children's need for permanency, stability, and finality. On this record, the trial court did not clearly err in finding that termination was in KP's and DF's best interests.

### IV. CONCLUSION

We reverse the termination of Stenman's parental rights respective to her two Indian children, AP and DP, and remand for further proceedings consistent with ICWA and its Michigan counterparts. Following further proceedings on remand, if the trial court determines that sufficient evidence supports terminating Stenman's parental rights over AP and DP, we also instruct the court to properly articulate its factual findings and legal conclusions regarding whether termination of Stenman's parental rights is in AP's and DP's best interests.[3] We affirm the trial court's termination order with respect to KP and DF. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello

---

[3] On first remand from this Court, the trial court acknowledged that it had overlooked its obligation to address whether terminating Stenman's parental rights was in KP's and DF's best interests. The court concluded, however, that it made a perfunctory finding regarding AP's and DP's best interests at the first termination hearing. A review of the record reveals that, at the first termination hearing, the trial court addressed whether termination of *the father's* parental rights was in AP's and DP's best interests, but at no time did the court make best-interest findings with respect to Stenman's parental rights over AP and DP.