*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. SHEHEE, Minor.

UNPUBLISHED
October 13, 2022

No. 360101
Genesee Circuit Court
Family Division
LC No. 17-134015-NA

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Respondent-father[1] appeals as of right the trial court's order terminating his parental rights to the minor child, KS, under MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent's home). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arose in the context of a contentious, and often violent, relationship between respondent-father and respondent-mother. KS was removed from respondents' care following an altercation—after which, respondent-father was arrested on criminal charges of domestic violence and child abuse. The criminal court imposed a no-contact order between respondents. Over the course of this case, respondent-father was granted unsupervised parenting time visits. Despite the no-contact order and respondent-mother's active substance abuse, respondent-father allowed respondent-mother to attend these visits. Respondent-father's temper persisted and he had angry outbursts in KS's presence. The Department of Health and Human Services (DHHS) filed a petition to terminate respondent-father's parental rights. The trial court authorized the petition and terminated his parental rights. This appeal followed.

---

[1] Respondent-mother was a respondent in the trial court proceedings and the trial court terminated her parental rights to KS. She is not a party to this appeal.

## II. STANDARD OF REVIEW

"The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted); MCR 3.997(K). Clear error exists when this Court "is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App at 271 (quotation marks and citations omitted). "The interpretation and application of statutes and court rules are . . . reviewed de novo." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). Further, this Court defers to "the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent-father argues that the trial court erred in finding statutory grounds for termination because there was no evidence showing a risk of harm to KS if she were returned to his care. We disagree.

## A. LAW AND ANALYSIS

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. In this case, the trial court found statutory grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(j). Under MCL 712A.19b(3)(j), termination is proper where: "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

The trial court concluded statutory grounds existed to terminate respondent-father's parental rights on the basis of his history of domestic violence and because respondent-father continued contact with respondent-mother despite their violent history, respondent-mother's drug use, and the no-contact order. In the trial court's view, respondent-father allowed respondent-mother to "cloud" his judgment and that he was "well aware of mom's drug problems and drug abuse and the potential risk and hazard to your child, but, for whatever reason, you overlook it." Although he participated in services, the trial court found respondent-father received "no discernable benefit." The trial court determined there was a risk of future harm to KS because respondent-father failed to take responsibility for his actions with respect to his anger issues, and because he continued to expose KS to respondent-mother, an active drug user.

The facts support the trial court's findings. Respondent-father's temper persisted throughout the case as demonstrated by his outbursts in the foster care office and his violent interactions with respondent-mother. Moreover, despite knowledge of respondent-mother's drug

abuse, respondent-father allowed respondent-mother to interact with KS during his unsupervised parenting time visits. Respondent-father denied these allegations, stating that others were lying.

Respondent-father argues that he completed many of the services required of him and that there was no evidence showing past harm, or the potential for future harm, to KS. This assertion is belied by the record. This case began as a result of respondent-father's violent temper and respondent-mother's drug use, and there was no evidence either condition had subsided by the time of termination. Because these conditions posed a risk of harm to KS, we are not left with a definite and firm conviction the trial court erred in finding statutory grounds for termination under MCL 712A.19b(3)(j).

## III. BEST INTERESTS

Respondent-father argues the trial court clearly erred in finding that termination was in KS's best interests. We disagree.

## A. LAW AND ANALYSIS

"Once a statutory ground for termination has been established by clear and convincing evidence, a preponderance of the evidence can establish that termination is in the best interests of the child." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). " 'The focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (brackets omitted), quoting *In re Moss*, 301 Mich App at 87. "In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it." *In re Payne/Pumphrey/Fortson*, 311 Mich App at 63. The trial court should consider:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, [] the advantages of a foster home over the parent's home . . . the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id.* at 63-64 (quotation marks and citations omitted).]

The trial court could also consider the risk of harm if the child were returned to the parent. See *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

The trial court found termination was in KS's best interests "due to her age, due to the length of time this has gone on, that she has a right to some permanence and finality." These findings are supported by the record. At the time of the termination hearing, KS had been in foster care for more than three years. There were reports KS was struggling with her mental health as a result of her foster care status. Further, testimony that respondent-father had angry outbursts in KS's presence was also relevant because it suggested that these outbursts would persist if KS were returned to respondent-father.

Respondent-father argues that termination was improper because he was bonded with KS, had housing, was able to support KS, and "it would be worse for her to know that she did not have a father at all." Although there was evidence demonstrating that respondent-father was bonded to

KS and he had housing, there was competing evidence that he was inappropriate in his interactions with KS and he allowed respondent-mother, a known drug user, to live in the home. There was also evidence that KS's foster family intended to be an adoptive resource for KS, which negates respondent-father's concern she would "not have a father at all." On this record, there is no evidence demonstrating the trial court clearly erred in finding termination was in KS's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron