*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re GREEN, Minors.

UNPUBLISHED
March 21, 2024

No. 366273
Midland Circuit Court
Family Division
LC No. 13-004192-NA

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Respondent M. Gibbs, the father of the minor children JMG and JSG, appeals as of right the trial court's order terminating his parental rights to the children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services ("DHHS"), initiated this child protection proceeding in September 2020 after receiving a complaint alleging verbal abuse, drug abuse, and physical abuse in the family home. At that time, the children, then ages 10 and 12 years old, were living with their mother, T. Green. Respondent, their father, had been absent for most of their lives. Green had a history of mental health issues and had been diagnosed with bipolar disorder and borderline personality disorder, and she would not take her medication. The petition alleged that Green had been physically and emotionally abusive to her children. JSG reported that Green screamed at them, told them "they are the worse," and accused them of being "just like your dad." JMG reported that Green yells at them all the time, calls them pigs, and tells them that they are lazy like their father. After the children were removed from Green's care and placed in the care of their maternal grandmother, DHHS reached out to respondent and provided him with services to assist him in reestablishing a relationship and healthy bond with his children.[1]

---

[1] Green was also named as a respondent, but she was noncompliant with services and the trial court also terminated her parental rights to the children at the same time it terminated respondent's parental rights. Green has not appealed that decision and is not a party to this appeal.

Respondent was compliant with services, which included a psychological evaluation, individual therapy, family therapy, parenting classes, and participation in parenting time, which eventually progressed to unsupervised parenting time. Over the course of two years that this case continued, however, DHHS determined that he did not benefit from the services after receiving reports that continued contact between respondent and his daughters was having a negative effect on the children and causing them significant emotional harm. Both girls had experienced years of physical and emotional abuse while living with Green and had been diagnosed with post-traumatic stress disorder ("PTSD"). Respondent, who was diagnosed with narcissistic personality disorder ("NPD"), was resistant to recognizing and understanding the impact his absence from his children's lives had on them while they were growing up, understanding the trauma they had experienced while living with Green, or empathizing with their feelings of abandonment and their mental health needs. According to the children's care providers, continued contact with respondent was causing them additional trauma. Then emotional stability declined dramatically after an incident in June 2022 when JMG became out of control and respondent attempted to physically restrain her by kneeling on her chest cavity to the extent that it interfered with her breathing and required her hospitalization for four days. Accordingly, DHHS filed a supplemental petition requesting termination of respondent's parental rights after many services, counseling, and other parenting interventions because respondent was not benefiting from services and just wanted his children to "get over" their trauma.

Following seven days of terminations, the trial court found that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and further found that termination of respondent's parental rights was in the children's best interests. Respondent now appeals as of right.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding that clear and convincing evidence supported a statutory ground for termination under MCL 712A.19b(3). We disagree.

This Court reviews for clear error a trial court's finding whether clear and convincing evidence supported a statutory ground for termination under MCL 712A.19b(3). *In re Smith*, 324 Mich App 28, 46; 919 NW2d 427 (2018). A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020).

The trial court found that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

It is only necessary that one statutory ground for termination be established by clear and convincing evidence. *In re Ellis*, 294 Mich App 30, 31; 817 NW2d 111 (2011).

We agree that clear and convincing evidence supports termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The principal condition that led to the adjudication with respect to respondent was that the children had been severely traumatized from years of emotional and physical abuse by Green, and respondent had been absent for most of his children's lives and had no relationship with his daughters. Both girls had been diagnosed with PTSD. While respondent participated in services offered by DHHS and was initially compliant with his case service plan, JMG's counselor reported as early as August 2021 that the trust between JMG and respondent remained strained and would need to be regained for JMG to feel comfortable with respondent again. Also, in the early stages of attempting to reestablish a relationship with his daughters, respondent displayed an attitude that both children needed to "get over" their childhood trauma, and he demonstrated a lack of insight or understanding on how to deal with children who had undergone trauma, their need for ongoing counseling or their need for medication.

The caseworkers, Erin Herrington and Dashay Withey, agreed that respondent was initially compliant with all services and parenting-time visits with the children appeared to be going well. Herrington also agreed that there were sufficient intervention services in place to consider reunifying the girls with respondent. As the case progressed, however, it became apparent that respondent's efforts to reestablish a relationship with his children were not succeeding; rather, they were creating continued trauma for both girls. At a hearing in May 2022, it was noted that respondent was not providing JMG with her prescription medication because he disagreed that it was necessary, and he had to be ordered by the court to provide the medication. By September 2022, Barry Ebig, a counselor who treated both girls and also conducted family therapy with respondent, testified that continued parenting time between respondent and his daughters was not

in the children's best interests because their time spent with respondent was "mentally and emotionally harmful to" them.

Ebig testified that respondent had been diagnosed with NPD and, during the honeymoon phase when respondent was getting to know his children, the traits of NPD were "dormant." Specifically, the girls were not testing respondent's authority or challenging the narcissistic image that respondent held of himself. When JMG shared her feelings with respondent and asked him why he was not there when she was growing up, he responded in a hostile tone, telling JMG that he too had been abandoned, and that she should "[j]ust learn to get over it." Ebig felt that reunification with respondent would be detrimental to the girls, particularly considering the trauma they had previously experienced while living with Green and their PTSD diagnosis.[2] Because respondent did not take responsibility for his prior actions or demonstrate any insight into how his prior abandonment had impacted his children, or demonstrate an understanding of the trauma they had experienced, reunification services were not in the girls' best interests. Ebig described the emotional harm to the girls as a "slow degradation," in which the girls continued to feel minimized, marginalized, and felt that they could never say what they wanted to say because their feelings, their thoughts, and their statements seemed immaterial to respondent.

Ebig explained that for respondent to successfully parent his children, he would need to learn skills to deal with children who had been traumatized and abandoned. When Ebig attempted to speak to respondent about the children's feelings that they were trying to express, or provide feedback on his parenting skills, respondent would "ignore it." Ebig stated that "[a]ny feedback that I gave at any other time, [he] wouldn't make contact with me and didn't acknowledge anything that I would say under those guidelines."

Herrington further explained that any plans for reunification changed following the June 2022 incident that led to JMG's hospitalization following her physical altercation with respondent. Both Ebig and a psychiatrist who treated both girls recommended that it was no longer in the girls' best interests to pursue reunification, to continue any types of visits with respondent, or to continue family therapy. The case had been languishing for approximately two years and, despite respondent's initial progress, he did not sufficiently benefit from the services provided, and the continued contacts with respondent were emotionally harmful to the children

Morgan Sauve, a therapist for Community Mental Health who provided therapy for both children, also testified that both girls stated that they "don't have a relationship with [respondent] and they don't really see one moving forward." Since September 2022, JMG had been demonstrating behavioral issues, including defiance, substance abuse, stealing, not paying

---

[2] JMG was diagnosed with major depressive disorder and cannabis use disorder (both severe), generalized anxiety disorder, PTSD, ADHD, conduct disorder, and unspecified personality disorder. JSG was diagnosed with PTSD, ADHD, severe anger issues, oppositional defiance disorder, as well as severe anxiety and depression. JMG sought substance abuse treatment at Great Lakes Recovery Centers Inc. for marijuana, "mushroom", and "LSD" use. She also struggles with suicidal ideation. Both of these young girls have significant mental health issues that have benefited from counseling, medication and, in the case of JMG, placements out of home.

attention in school, and falling asleep in school. JMG's delinquent behaviors started not long after the June 2022 incident with respondent. Her behavior led to her being adjudicated in the juvenile court and placed in a juvenile center for the third time. JMG, age 15 at the time of the termination hearing, was also smoking marijuana and was involved in an altercation with a police officer.

On the basis of this evidence, the trial court did not clearly err by finding that the conditions that led to the adjudication continued to exist, and that it was not reasonably likely that the conditions would be rectified within a reasonable time considering the ages of the children. Respondent had played a minimal role in his daughters' lives before the adjudication, and although he participated in services and family therapy in an attempt to reestablish a relationship with his daughters and develop a healthy bond, he continued to demonstrate a lack of insight and understanding of the trauma they had experience and their mental health needs, as well as his own mental health struggles, that inhibited and undermined his ability to form a healthy relationship and bond with his children. In sum, respondent's lack of insight, insensitivity, and lack of understanding demonstrated that the conditions that led to the adjudication had not been rectified. Moreover, considering respondent's NPD diagnosis, and the evidence of the children's deteriorating mental health from their continued contact with respondent, the trial court did not clearly err by finding that the conditions that led to the adjudication were not reasonably likely to be rectified within a reasonable period of time given the significant amount of time that respondent had to participate in and benefit from services.[3] Thus, the trial court did not clearly err by finding that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*).

"Because one statutory ground for termination was established by clear and convincing evidence, [this Court] need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). Nevertheless, we believe the foregoing evidence also supports termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j). If a parent does not benefit from a case service plan, that is evidence that the parent will not be able to provide proper care and custody under MCL 712A.19b(3)(g). *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Although respondent participated in services, he clearly was not able to learn the skills he needed to provide a healthy, supportive environment for his children to grow, recover, and thrive. His inability to recognize the significant mental anguish the children suffered at the hands of their mentally ill mother and his absence from their young lives prevented him from supporting the children in their treatment and recovery from PTSD. Therefore, the trial court did not clearly err by finding that he would not be able to provide proper care and custody for his daughters. MCL 712A.19b(3)(g). Moreover, "[t]he harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). According to Herrington, both the children's psychiatrist and therapist reported that the children would suffer mental and emotional harm if they remained in respondent's care. This evidence supports the trial court's finding that the children were reasonably likely to be harmed if returned to respondent's home. MCL 712A.19b(3)(j).

---

[3] The adjudication occurred on December 4, 2020, and the opinion affirming the referee's recommendation regarding the petition to terminate respondent's rights issued on May 3, 2023.

-5-

## III. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of his parental rights was in the children's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). A trial court's decision whether termination of parental rights is in a child's best interests is reviewed for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

At the best-interests stage, the focus is on the child, not the parent. *Id.* When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors, including

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 346-347, quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015).]

Caseworker Janet Johnson explained that DHHS was seeking termination of respondent's parental rights because of respondent's lack of progress in reestablishing a healthy relationship with his daughters. Despite participating in a multitude of services, he failed to demonstrate any insight into how to parent his daughters, particularly in understanding and knowing how to address their mental health needs. Johnson also explained that both children had been in "out-of-home placement" for more than two years and they were in need of permanency and stability. Although JMG was in juvenile detention, she was improving. JSG was "doing fantastic," she was on the honor roll at school, and she was participating in gymnastics. Both girls had experienced years of trauma because of the instability and abuse they experienced with Green and their abandonment by respondent, and the uncertainty surrounding their current situation was causing anxiety and emotional harm. Both girls were adamant that they did not want to have contact with respondent and told Johnson that they would run away if they were placed with him. At the time of the termination hearing, JMG was scheduled to attend rehabilitation in the Upper Peninsula. JMG was feeling very hopeful and positive about attending rehabilitation to get treatment for her marijuana use and support for her mental health. Accordingly, Johnson believed that termination of respondent's parental rights was in the children's best interests. Ebig and Herrington likewise testified that termination of respondent's parental was in the girls' best interests.[4]

---

[4] Notably, the witnesses respondent called to testify regarding his progress in his parenting classes and counseling never saw respondent interact with his daughters. Respondent also testified at trial

Accordingly, the trial court's finding that termination of respondent's parental rights was in the children's best interests is supported by the record and not clearly erroneous. While respondent did initially participate in individual and family therapy, he did not benefit from these services because he showed limited insight into his daughters' mental health issues. The girls experienced significant trauma not only because of his absence in their lives but also because of their mother's abusive behavior. Respondent minimized the trauma his daughters had experienced and was not supportive of their feelings and needs. The relationship between respondent and his daughters further deteriorated when JMG had an emotional episode and respondent used physical force to restrain her, resulting in her hospitalization for four days. Both girls were afraid of both respondent and his wife, and they were adamant about not being placed with him. Both children were in desperate need of stability, permanency, and finality that respondent had never provided but their grandmother could offer. The lack of stability and uncertainty significantly impacted JMG, as manifested by her behavioral and substance abuse issues. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

---

regarding his discipline techniques and how he "popped" JMG in the mouth when she acted out in June 2022; he also testified that Ebig gave him permission to "whoop the girls" and use "pats on the back of the butt, whatever," as a form of discipline, although he denied disciplining his daughters. Clearly, respondent's parenting had not improved despite counseling and classes.