*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CUNIC, Minors.

UNPUBLISHED
July 22, 2025
2:15 PM

No. 373416
Branch Circuit Court
Family Division
LC No. 21-006256-NA

Before: FEENEY, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Respondent-mother (respondent) appeals as of right the trial court's order terminating her parental rights to two minor children, KRC and RJC, under MCL 712A.19b(3)(j).[1] We affirm.

To terminate parental rights, a single statutory ground must be established by clear and convincing evidence, and this Court reviews the trial court's ruling for clear error. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). If it is proved by a preponderance of the evidence that the termination of parental rights is in the child's best interests, the trial court must terminate a respondent's parental rights to that child. *Id*. A trial court's finding that termination of a respondent's parental rights is in the child's best interests is also reviewed for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 272-273; 976 NW2d 44 (2021). Respondent contends that the trial court erred in determining that termination of respondent's parental rights was in the children's best interests by

---

[1] At the time the supplemental petition was filed MCL 712A.19b(3)(j) stated, "The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following: . . . (j) [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."

failing to explicitly address their relative placement with fictive kin[2] weighed against termination. We disagree.

To determine whether termination of a respondent's parental rights is in the children's best interests,[3] the trial court should weigh all possible evidence, including

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. [*In re Atchley*, 341 Mich App at 346 (citation omitted).]

During the best-interest stage, the emphasis is on the child rather than the parent. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

A child's placement with relatives is a factor that the trial court must consider when examining the children's best interests. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). A child's placement with relatives generally weighs against termination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010);[4] *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). When it is determined that a case will proceed to termination, the child's placement with relatives at that time is only "a factor to be considered in determining whether termination is in the child's best interests." *Id*. at 43. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. *Id*. And the

---

[2] In the trial court, respondent challenged whether the children's placement with her half-brother's mother constituted a relative placement, but does not raise that argument on appeal. In 2022, the Legislature expanded the definition of "relative" to include a person "who has a strong positive emotional tie or role in the child's life . . ., as determined by" DHHS, referred to as fictive kin. See MCL 712A.13a(1)(j)(*ii*).

[3] We note that respondent does not challenge the trial court's finding that the proofs offered to support the statutory ground for termination, MCL 712A.19b(3)(j), was satisfied, and that an evaluation of the pertinent factors demonstrated that termination of respondent's parental rights was in the children's best interest. For purposes of completeness, we conclude that the trial court did not clearly err when it found that this statutory ground was established. Respondent's history of mental instability, her inability to manage the stress of parenting when the children spent the majority of their time in daycare, and her physical assaults and emotional outbursts upon service providers and others subjected the children to an insecure environment when they needed permanency and stability.

[4] In *Mason*, our Supreme Court noted that the respondent could fulfill the duty to provide proper care and custody by voluntarily granting legal custody of his children to relatives during his incarceration in prison. *Mason*, 486 Mich at 163. Such placement could prevent the initiation of termination proceedings under MCL 712A.19a. In the present case, respondent did not voluntarily assent to the fictive kin placement, but repeatedly opposed it. And unlike *Mason*, it was unclear when and if respondent could manage her mental health so that she could care for her children.

trial court is presumed to know the pertinent law. *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367014); slip op. at 9 (quotation marks and citation omitted).

In this case, the issue of relative placement was repeatedly discussed before the court. In part, Children's Protective Services investigated after respondent sought help from AW,[5] the children's placement, when attempting to remove nail polish that the children had put on their bodies while in respondent's care. After respondent arrived, she argued with MW, AW's son and respondent's half-brother. Respondent also admitted to physically pushing AW.

Moreover, both respondent and the children's legal father opposed placing the children with AW. And, after the court placed the children with AW, respondent moved for a change of caregivers and alleged that placement in foster care would be better than placement with AW. Respondent claimed that AW "instigated" problems; however, respondent did not provide specific details for the record. Also, despite respondent's perception that AW instigated problems, respondent sought AW's advice about how to handle the children's behaviors and acts of defiance. When respondent later sought a hug from AW during the termination proceeding, respondent acknowledged that AW's refusal was understandable because respondent had maligned AW throughout the proceedings.

In response to respondent's objection and motion to change the fictive kin placement from AW, the GAL acknowledged that the children were not in physical danger in AW's care and that DHHS was providing services to AW to improve the children's environment. The GAL opined that the parties were more concerned with being "right" than putting the children's interests first. The GAL further noted that he had received praise for AW as the relative placement. Thus, the GAL did not recommend a change in relative placement and was inclined to wait for an assessment of AW's home and for the approval of other potential relative placements.

The record reflects that, after the initiation of termination proceedings, the trial court appropriately considered relative placement as a factor when examining best interests. *In re Olive/Metts*, 297 Mich App at 43. That is, the trial court considered that a fictive kin placement was "a factor" to consider, the issue was raised by the GAL, and the trial court determined that termination of respondent's parental rights was in the children's best interests "not[]withstanding" the relative placement. Indeed, respondent did not voluntarily place the children with AW, *In re Mason*, 486 Mich at 163, and their interactions could result in emotional and stressful situations for the children, who required "permanence, safety and stability." Under the circumstances presented in this case, the trial court did not clearly err by determining that termination of respondent's parental rights was in the children's best interest.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[5] Although respondent referred to AW as her "ex-stepmother," AW had previously dated respondent's father and given birth to their child, MW. Thus, MW was respondent's half-brother.