*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. PRICE, Minor.

UNPUBLISHED
February 12, 2026
1:33 PM

No. 374781
Wayne Circuit Court
Family Division
LC No. 2024-001197-NA

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, MA, under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In July 2024, petitioner, the Department of Health and Human Services (DHHS) filed a petition requesting the court to take jurisdiction over MA and seeking termination of respondent's parental rights to her. The petition alleged that respondent had sexually abused MA, who was 13 years of age at the time, by putting his hand into her pants and rubbing her buttock. MA slapped his hand away, which caused him to chuckle and say, "My bad." MA disclosed the abuse to her cousin and during a Kids' Talk interview. Respondent denied the allegation. He indicated that MA was at his house because her mother could not control her behavioral issues. He believed that she made the story up because she did not want to be in his home as it was more structured than her mother's home. The petition also indicated that respondent had been charged criminally as a result of the alleged assault and that he had a prior criminal history involving receiving and concealing a stolen motor vehicle and fleeing or eluding a police officer. The court authorized the petition.

An adjudication trial was scheduled for September 2024. At the hearing, respondent's lawyer stated that he had only just spoken with respondent that day.[1] He then requested an adjournment of the trial until after respondent's criminal matter was resolved. The court denied the adjournment. Respondent's lawyer then indicated that respondent would be entering a "no contest" plea to jurisdiction and to statutory grounds for termination. The court placed respondent under oath, advised him of the rights he would give up by entering a plea and the consequences of entering a plea. Respondent affirmed that he understood the rights and consequences and that he wanted to enter a "no contest" plea. The parties agreed that a CPS report would be used to establish the factual basis for the plea.[2] Based upon the report, the court found that respondent placed his hand down MA's pants, under her underwear, and rubbed her buttocks.

A best-interests hearing was scheduled. Before it was held, respondent's lawyer filed a motion to withdraw as counsel. Respondent's lawyer appeared in-person on the day of the hearing, but he left the courtroom and refused to return. After leaving, he called the clerk of the court and advised that he would not return to the courtroom. Respondent requested appointment of a new lawyer. The court granted the request and adjourned the hearing.

Thereafter, the best-interests hearing was held in January 2025. At the hearing, a clinical report was admitted that detailed respondent's sexual assault of MA. Additionally, a caseworker testified that MA was placed with her mother, that MA's mother had sole legal and physical custody over MA, that MA did not have a consistent relationship with respondent, and that respondent had not been supporting MA financially. MA stated a preference for staying with her mother and expressed that she did not "really have a relationship" with respondent. She told the caseworker that she did not feel safe in respondent's house because of the sexual-assault and because of his absence from her life. The caseworker explained that DHHS's policy was to seek termination at the initial petition in cases where a child discloses sexual assault. As a result, alternatives to termination were not explored. Nevertheless, she indicated that services could be beneficial to respondent, but she maintained that termination of respondent's parental rights was in MA's best interests because of the disclosures that were made.

Respondent testified on his own behalf. He denied the allegations of sexual abuse and stated that he had a "normal father and daughter relationship" with MA. He explained that MA had behavioral issues and was sexually active with someone in her mother's neighborhood. He felt that contact with him could have a positive impact on her. He noted that he was living with his mother and that there was room in the home for MA. Further, he testified that, although he did not pay child support, he would have "no problem" with "supporting the child." He was employed as a mechanic, but the work was inconsistent so he would not consider it being "fully employed." Respondent further testified that he was working on getting the criminal case against him dismissed. He also stated that he was "open" to "doing services" and felt that he could "always

---

[1] The order of adjudication stated that respondent was provided with an opportunity to speak with his lawyer before going on the record.

[2] The report was 22 pages long and the parties agreed to concentrate on the last two pages. The court indicated that the last two pages would be "pages 121 and 22." Given that the report only had 22 pages, reference to "122" appears to be a misstatement by the court.

improve as a father." When asked what he would like the court to do, he stated that he wanted the court to "hear my side of the story."

Following the hearing, the court found that it was in MA's best interests for respondent's parental rights to be terminated. This appeal follows.

## II. PLEA TO JURISDICTION AND STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent argues that his no-contest plea was defective because he was unable to review the CPS report that served as the factual basis for his plea. This issue is unpreserved because respondent did not move in the trial court to withdraw his plea nor did he object to the use of the CPS report as a factual basis for his no-contest plea. See *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020). As a result, our review is for plain error affecting respondent's substantial rights. *Id*. at 463. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted).

### B. ANALYSIS

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *Pederson*, 331 Mich App at 463 (quotation marks and citation omitted). "Generally, a court determines whether it can take jurisdiction over the child in the first place during the adjudicative phase." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). "The fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court is called a trial." *Pederson*, 331 Mich App at 464 (quotation marks and citation omitted). Additionally, the trial "includes a specific adjudication of a parent's unfitness to determine whether the parent is subject to the dispositional authority of the court." *Id*. A respondent may waive their right to that trial and either admit, or plead no contest to, the allegations in the petition. MCR 3.971(A). Before accepting such a plea, the court must ascertain whether "the plea is knowingly, understandingly, or voluntarily made." MCR 3.971(D)(1).

Respondent contends that his plea was invalid because he was not asked whether he was pleading no-contest. The court asked respondent if it was "correct" that he was entering a no-contest plea, and respondent answered, "Yes, Your Honor." Accordingly, there is no factual support for this claimed error.

Next, respondent argues that his plea was not knowing or intelligent. He contends that the CPS report that was used as the factual basis was e-mailed to his lawyer during the hearing and that his lawyer admitted that he had not received the document in advance of the trial. He states that the document was "large" and that his lawyer had a "very short time" to review it. Respondent contends that his lawyer "did not fully explain [to him], or more likely did not explain at all" what was in the report. He maintains that he did not have an opportunity to consult with his lawyer before he agreed to enter the plea. He has not provided a citation to the record in support of those assertions.

Nowhere in the record does respondent's lawyer state that he had not received the report before the hearing. Moreover, in the court's order of adjudication, it is noted that, prior to going on the record, respondent had the opportunity to consult with his lawyer. Indeed, on the record, respondent's lawyer represented that he had spoken to respondent for the first time that day. As there are no conversations with respondent on the record, it is reasonable to infer that the conversation occurred before the hearing started.

It is, however, unclear whether the report was e-mailed to respondent's lawyer before the hearing or whether it was e-mailed to him during the hearing. Here, after stating that the report would be used to establish the factual basis for the no-contest plea, petitioner stated that the report had been sent to respondent's lawyer and to the child's guardian ad litem. The court then asked whether it had been provided to the court, and petitioner explained that it had not. She then e-mailed it to the court. She stated at that time that she also e-mailed it to respondent's lawyer. The report was 22 pages long. The court asked if there was an area of the report that the parties had agreed to concentrate upon. Petitioner stated that the parties had agreed to concentrate on the last two pages, which she identified as the dispositive narrative. Respondent's lawyer did not object. Instead, when the court asked if there was any objection to the admission of the document, respondent's lawyer stated that there was none. Based upon the uncontradicted assertion from petitioner that the report had been provided to respondent's lawyer and that respondent's lawyer had agreed that the last two pages of the report should be concentrated on by the court, it is reasonable to assume that the report was provided in advance of the hearing and that respondent's lawyer had, at a minimum, discussed it with petitioner before the hearing. However, given that petitioner also stated on the record that the report had been simultaneously e-mailed to the court and to respondent's lawyer, there is at least some support for respondent's contention that it was not provided to his lawyer in advance of the hearing.

If the report was provided before the hearing, then respondent's lawyer could have reviewed it with him before the hearing began. If it was provided during the hearing, however, the record is devoid of any indication that respondent's lawyer reviewed it or discussed it with respondent. Given that the record does not clearly indicate which version of events is correct, we conclude that respondent cannot establish that any error that existed is not "clear or obvious."

Moreover, respondent cannot show that his substantial rights were affected by the alleged error. The outcome of the proceeding was that the court used respondent's no-contest plea to establish jurisdictional grounds and statutory grounds for termination. Respondent does not contend that he would have declined to enter a no-contest plea if he had able to review the report with his lawyer. Instead, he maintains only that he was "severely prejudiced" without clearly identifying any actual prejudice that he suffered. He does state that he was "gravely prejudiced" going into the best-interests stage of the proceedings. However, considering that he made no admissions as part of his plea, petitioner nevertheless submitted evidence of respondent's sexual assault at the best-interests hearing. On this record, we conclude that respondent has not established that the alleged plain error affected his substantial rights, i.e., that the outcome of the plea proceeding would have been different. See *In re Sanborn*, 337 Mich App at 258.

III. INEFFECTIVE ASSISTANCE

A. STANDARD OF REVIEW

Alternatively, respondent argues that reversal is warranted because he was provided with ineffective assistance. "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). This issue is unpreserved because respondent did not move for a new trial or evidentiary hearing in the trial court, nor did he move for remand on appeal. See *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022). Because no evidentiary hearing was held, our review is limited to mistakes that are apparent on the record. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021).

## B. ANALYSIS

Respondent contends that his lawyer was ineffective at the adjudication trial. In order to establish ineffective assistance, respondent must establish that his or her lawyer's "performance fell short of [an] objective standard of reasonableness and that, but for counsel's deficient performance there is a reasonable probability that the outcome of the respondent's trial would have been different." *In re Casto*, 344 Mich App 590, 611-612; 2 NW3d 102 (2022) (quotation marks, citation, and alterations omitted). Here, respondent contends that his lawyer was unprepared for the adjudication trial, so he convinced respondent to enter a no-contest plea. He also asserts that his lawyer was ineffective for agreeing to the admission of the CPS report that formed the factual basis for the no-contest plea. However, he has not argued that he was prejudiced in the child-protective proceedings by his lawyer's allegedly deficient performance. Because he bears the burden of establishing both prongs of his claim of ineffective assistance and because no argument has been presented as to the second element, we conclude that respondent has not met his burden of showing ineffective assistance.

Furthermore, having reviewed the record, we conclude that there is not a reasonable probability that, but for respondent's lawyer's allegedly deficient performance at the plea hearing, the result of the proceedings would have been different. Again, respondent has not indicated that he would have declined to enter a plea had he been properly advised of the contents of the CPS report. As a result, on this record, there is nothing to indicate that the outcome of the proceedings would have been different if respondent had been properly advised by his lawyer prior to the adjudication hearing.

## IV. BEST INTERESTS

### A. STANDARD OF REVIEW

Finally, respondent argues that the trial court erred by finding that termination of his parental rights was in MA's best interests. This Court "review[s] for clear error a trial court's finding that termination of a parent's parental rights was in the child's best interests." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Sanborn*, 337 Mich App at 276 (quotation marks and citation omitted).

B. ANALYSIS

In determining best-interests, a trial court "may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). Further, a child's safety, well-being, and the risk a child might face if returned to the parent's care are also relevant to the best-interest determination. *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

Respondent contends that the trial court did not address all of the best-interest factors and that it relied almost exclusively on respondent's no-contest plea when it made its best-interests findings. The court is not, however, obligated to consider a set list of factors. See *In re Payne/Pumphrey/Fortson*, 311 Mich App at 63-64 (stating a non-exhaustive list of factors that the court *may* consider). The court did find that respondent's no-contest plea to statutory grounds was a relevant factor in its best-interests determination. The statutory grounds included that respondent had sexually assaulted MA. It was proper for the court to consider the statutory grounds when making a determination of MA's best interests. MA's best interests would not be served by preserving the parental rights of a parent who had sexually assaulted her.

That was not the only factor considered by the court, however. Indeed, the court also found that MA did not have a strong bond with respondent. That finding was supported by MA's representations as to her weak bond with respondent. The court was not required to believe respondent's testimony that he had a normal "father and daughter" relationship with MA. Next, the court considered MA's preference not to have a relationship with respondent. MA was 14 years old at the time of the best-interest hearing, so it was appropriate to consider her preferences. See *In re Medina*, 317 Mich App 219, 239; 894 NW2d 653 (2016) (stating that a court may consider the preferences of a child who is of a sufficient age to express a preference). For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in MA's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young

-6-