*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. A. BIGGS, Minor.

UNPUBLISHED
April 25, 2024

No. 367434
Wayne Circuit Court
Family Division
LC No. 2023-000273-NA

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Respondent,[1] appeals by right the trial court's order terminating her parental rights to minor child, KAB, under MCL 712A.19b(3)(f)(*i*) (child has a guardian but parent failed or neglected to provide child regular and substantial support for two years or more), and (*ii*) (child has a guardian but parent has failed to visit, contact, or communicate with the minor child for two years or more). Respondent contends that the trial court erred by failing to consider that a personal protection order ("PPO") and the COVID-19 pandemic prevented her from exercising her parental rights. Because the limitations imposed by the PPO and COVID-19 were lifted early in the relevant two-year period under MCL 712A.19b(3)(f), we affirm the trial court's order terminating respondent's parental rights.

## I. BACKGROUND

Petitioner is T.L. Welton, who has no blood relation to KAB, but is married to D.R. Welton, who is respondent's aunt's first cousin.[2] T.L. Welton petitioned for permanent custody of KAB on February 27, 2023. The relevant period of inquiry under MCL 712A.19b(3)(f), therefore, is February 27, 2021 to February 27, 2023. D.R. Welton joined in the petition to terminate respondent's parental rights. Petitioners are co-guardians of KAB who has been in their custody

---

[1] The trial court also terminated the parental rights of the minor child's father after having determined the child's father is unknown and unascertainable. No appeal on his behalf has been filed. Consequently, we will refer to the child's mother as "respondent."

[2] Petitioners will be referred to as "petitioners" throughout this opinion, but will be referred to individually as T.L. Welton and D.R. Welton when necessary.

since September 2016 when respondent was 22 years old and homeless. Respondent's aunt, and D.R. Welton's first cousin, T.L. Glaster, connected respondent with petitioners who agreed to care for KAB. Petitioners filed for guardianship in October 2016, and were awarded guardianship on January 24, 2017.

Respondent petitioned the probate court in October 2017 and in March 2018 for termination of the guardianship, but the court denied both requests. Sometime between the first and second petition to terminate the guardianship, respondent called the Michigan State Police ("MSP") and told them KAB had been kidnapped. In response to this behavior, the court granted T.L. Welton a PPO against respondent. The PPO expired sometime in 2019 or 2020, but respondent has not had contact with petitioners since.

Because of the COVID-19 pandemic, our Michigan Supreme Court entered Administrative Order No. 2020-1[3] (AO 2020-1), which became effective March 15, 2020. The order directed Michigan courts to use technology to enable parties to participate in remote proceedings and facilitate electronic filing and service. *Id*. Our Supreme Court rescinded AO 2020-1[4] on July 26, 2021, allowing Michigan courts to resume holding in-person proceedings as necessary.

On February 27, 2023, petitioners filed a petition in the Wayne Circuit Court Family Division for permanent custody of KAB, requesting the parental rights of respondent and the unidentified father be terminated to allow adoption. The trial court took judicial notice of the Letters of Guardianship and exercised jurisdiction over KAB under MCL 712A.2(b)(6). T.L. Welton testified that, from the beginning of the relevant period, February 27, 2021 to the filing of the termination petition, she never received any financial assistance or material support from respondent for KAB's benefit. Respondent also never had any parenting time with KAB or tried to have any contact with him. D.R. Welton testified that respondent could contact him and speak to KAB if she wanted, but had never done so.

Petitioners were married for 12 years and lived together with KAB for almost eight years. KAB called them "mom" and "dad" and thrived in their care. They provided KAB parental guidance, love, affection, and provided for his material, physical, medical, and spiritual needs. Respondent last had contact with KAB in January 2017, when he was 14 months old, and she made no effort to contact petitioners since February 27, 2021. Respondent provided no portion of her income for KAB's benefit. She claimed that she did not do so because she feared petitioners.

The referee recommended terminating respondent's parental rights to KAB because petitioners met their burden by showing that clear and convincing evidence established that respondent did not make efforts to contact or support KAB since February 27, 2021. The presiding judge adopted the referee's recommendation and entered an order terminating the parental rights of respondent and the unknown father. Respondent now appeals.

---

[3] 505 Mich xcix (2020).

[4] 507 Mich cxcvii (2021).

## II. STATUTORY GROUNDS

Respondent contends the trial court erred when it overlooked the effect the PPO and the COVID-19 pandemic had on her ability to contact and provide support for KAB. We disagree.

### A. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "We review the trial court's determination of statutory grounds for clear error." *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 272-273 (quotation marks and citation omitted). "This Court reviews de novo questions about the correct interpretation and application of statutes and court rules." *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017); see also *In re Piland*, 336 Mich App 713, 720; 972 NW2d 269 (2021).

### B. ANALYSIS

" '[T]o terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence.' " *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 635; 853 NW2d 459 (2014), quoting *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Termination is appropriate under MCL 712A.19b(3)(f) when:

> (f) The child has a guardian under the [EPIC[5]], and both of the following have occurred:
>
> > (*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.
>
> > (*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition. [MCL 712A.19b(3)(f).]

---

[5] Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*.

This Court has defined "good cause" as "a legally sufficient or substantial reason . . . ." *In re Utrera*, 281 Mich App 1, 10-11; 761 NW2d 253 (2008). "[T]he court must determine whether statutory grounds for termination exist by looking at the two years immediately preceding the filing of the termination petition." *In re Caldwell*, 228 Mich App 116, 120; 576 NW2d 724 (1998).

The plain language of MCL 712A.19b(3)(f) specifies that, if KAB has guardians under EPIC and the provisions of subsections (*i*) and (*ii*) are proven by clear and convincing evidence to have existed for at least two years before the petition's filing and while the guardianship remained in place, the parent effectively abandoned the minor child both financially and physically, requiring termination. In this case, KAB had appointed guardians. The trial court concluded that evidence established that respondent had not provided any support for KAB for two years before the petition's filing. Evidence established that, although respondent had been employed for five years and provided care for her two other children, she provided nothing for KAB. Such evidence established respondent's ability under MCL 712A.19b(3)(f)(*i*) to provide regular and substantial support for KAB, but respondent failed to do so.

Respondent argues that the PPO and COVID-19 prevented her from providing financial support. Petitioners correctly assert that respondent continued to have access to the probate court during COVID-19. AO 2020-1 merely required courts to adjust to virtual hearings and electronic filing. Respondent was not prevented from participating in any proceedings in the probate court. The trial court did not err by concluding that alternative channels were available to respondent to provide support to KAB during the pandemic. The court properly noted that respondent "could have gone to the Probate Court and requested an address that she could send financial support. She could have initiated her own Financial Support Order through the Friend of the Court. The Friend of the Court did not close through this period."

Our Supreme Court rescinded AO 2020-1 on July 26, 2021, five months into the relevant period. To the extent that COVID-19 inhibited respondent's ability to access the probate court between February 27, 2021, and February 27, 2023, after July 2021 she had in-person access to the court available to her. Accordingly, she cannot claim that the administrative order prohibited her from fulfilling her parental responsibilities during the relevant period. The PPO also expired in either 2019 or 2020, well before the relevant period began. Accordingly, she cannot claim that the PPO prohibited her from fulfilling her parental responsibilities during the relevant period.

Respecting MCL 712A.19b(3)(f)(*ii*), the trial court correctly concluded that clear and convincing evidence established that respondent failed, without good cause, to visit, contact, or communicate with KAB from February 27, 2021 to February 27, 2023. Respondent argues that the PPO prevented her from communicating with KAB and that petitioners prevented contact with KAB. Testimony at trial, however, established that respondent at least had Glaster's contact information, and she could have communicated with Glaster to connect her with petitioners, who Glaster saw regularly. Respondent never asked Glaster about KAB, and the two had not communicated for five years at the time of trial. Evidence established that respondent had no contact of any kind with Glaster, petitioners, or KAB between February 27, 2021, and February 27, 2023. Although respondent claims that she would have contacted KAB given the opportunity, the evidence establishes that she did nothing during the relevant period.

-4-

Petitioners proved by clear and convincing evidence that, for at least two years before the petition's filing and while a guardianship remained in place, respondent effectively abandoned KAB both financially and physically. Accordingly, we affirm the trial court's termination decision under MCL 712A.19b(3)(f).

## III. BEST INTERESTS

Respondent contends that the trial court erred when it failed to consider how the PPO deprived her of contact with KAB, and that T.L. Welton was related to KAB, which weighed against termination. We disagree.

### A. STANDARD OF REVIEW

"We . . . review for clear error a trial court's decision that termination is in a child's best interests." *In re Jackisch/Stamm-Jackisch Minors*, 340 Mich App 326, 333; 985 NW2d 912 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*.

### B. ANALYSIS

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). " 'The focus at the best-interests stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (alterations omitted), quoting *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App at 733. The trial court is permitted to consider multiple factors in deciding whether termination serves the child's best interests including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, . . . . [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (quotation marks and citations omitted).]

However, placement with a relative weighs against termination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Indeed, "the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interest." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted).

In this case, the trial court considered KAB's calling petitioners "mom" and "dad" and that the child has known no man to be his father other than D.R. Welton. The trial court also considered evidence that petitioners provided KAB with not only basic necessities, but many extracurricular activities "important for development of a young person . . . ." The trial court took into

consideration that T.L. Welton is KAB's great aunt's first cousin's wife, a relative under MCL 712A.13a(1)(j)(*i*).[6]  Although the trial court did not explicitly state on the record that KAB's relation to petitioners weighed against termination, the trial court took judicial notice of the Letters of Guardianship which showed KAB was in petitioners' care for almost eight years.  Importantly, the trial court explained, "I appreciate and certainly gave all the lawyers some leeway because especially when it's family that's raising someone else's child, there's history there."  In *In Re Gonzales/Martinez*, 310 Mich App 426, 435; 871 NW2d 868 (2015), this Court held that the trial court did not err in finding that termination served the children's best interests where the children's aunt and uncle were willing to adopt them and both children were excelling in their relatives' care.  This case is very similar.  Despite the familial relation, the trial court found that termination served KAB's best interests because evidence established the excellent care he received under petitioners' care and custody.  Petitioners also sought and were taking steps to adopt KAB.  Respondent had no bond with KAB and never contacted or communicated with him for years.  We are not persuaded that the trial court erred in its best-interest analysis or decision.  Accordingly, the trial court properly ordered the termination of respondent's parental rights to KAB.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[6] MCL 712A.13a(1)(j)(*i*) (emphasis added) states a "relative" means an individual who is at least 18 years of age and is:

> Related to the child within the fifth degree by blood, marriage, or adoption, *including the spouse of an individual related to the child within the fifth degree*, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found probable cause to believe is the putative father if there is no man with legally established rights to the child.