*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GULLETT/RIPLEY, Minors.

UNPUBLISHED
January 13, 2025
3:38 PM

Nos. 369082; 369084
Ingham Circuit Court
Family Division
LC Nos. 21-000699-NA;
         21-000700-NA;
         21-000701-NA;
         22-000505-NA

Before:  N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In Docket No. 369082, respondent-mother appeals as of right the order terminating her parental rights to the minor children JG, CR, KG, and JHG.  In Docket No. 369084, respondent-father appeals as of right the same order terminating his parental rights to JG, CR, KG, and JHG.[1] Respondent-parents' respective parental rights were terminated under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions) and (j) (reasonable likelihood of harm if returned to parent).  We affirm in both dockets.

## I.  FACTUAL BACKGROUND

This matter began when petitioner, the Department of Health and Human Services (DHHS), filed a petition for temporary custody of JG, CR, and KG under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment) and (2) (unfit home environment due to neglect).  The petition alleged that the children were found in a home that smelled of feces and urine, had soiled diapers on the floor, and that respondents had failed to

---

[1] These appeals were consolidated to advance the efficient administration of the appellate process. *In re Gullett/Ripley Minors*, unpublished order of the Court of Appeals, entered March 5, 2024 (Docket Nos. 369082 and 369084).

properly supervise the children, one of whom would repeatedly bang his head against a wall in his locked bedroom. This child had injuries consistent with bed sores. Both respondents had a substance abuse problem.

The trial court acquired jurisdiction over JG, CR, and KG in September 2021. Respondent-parents were ordered to complete a case service plan, which included visitation, individual therapy, psychological evaluations, substance abuse treatment, drug screenings, and parenting classes. JHG was born in June 2022. Respondent-mother tested positive for cocaine during her pregnancy for JHG. The DHHS filed a petition for temporary custody of JHG under MCL 712A.2(b)(1) and (4) (failure to comply with a court-structured plan). The trial court acquired jurisdiction over JHG in June 2022. CR was placed with a relative and the three other children were placed in separate foster placements.

The trial court held a joint termination of parental rights and best-interest hearing on September 6, 2023. Respondent-mother was not present at the termination hearing because she checked herself into the hospital, citing psychiatric concerns. Respondent-father was present at the termination hearing and testified. During his testimony, respondent-father downplayed respondent-mother's substantial history of substance abuse, including using cocaine during her pregnancies. He also denied that he used cocaine after testing positive for it in the month before the termination hearing. He blamed his positive screening on handling money with traces of cocaine residue. JG, CR, and KG all demonstrated severe developmental delays. Respondent-father did not know what services JG, CR, and KG received and denied that CR and KG displayed traits of autism or developmental delays.

Following that hearing, the trial court terminated respondent-mother's and respondent-father's parental rights to JG, CR, KG, and JHG under MCL 712A.19b(3)(c)(*i*) and (j), and found it was in the children's best interests to do so. The trial court noted that the conditions that existed at the time of adjudication were substance abuse, poor parenting skills, and improper supervision of the children which caused developmental delays and, in JG's case, physical injury. The court stated that substance abuse was still a major concern for both respondents, who continued to test positive for drugs and had not benefited from the extensive services provided to them. Respondents had significant emotional limitations, and respondent-father had continued difficulty restraining his intense, unstable emotions. The relative care provider was fearful of respondent-father because of threats he had made toward her family. Given the children's ages, the court found these conditions would not be rectified within any reasonable time. The trial court acknowledged that respondent-father had made some improvements, but he lacked insight to respondent-mother's limitations. The court stated it was no closer to returning the children to respondents than it was when the case was opened two years ago. It also found by clear and convincing evidence that there was a reasonable likelihood that the children would be harmed if returned to respondents' care because of their substance abuse, lack of parenting skills, and emotional instability.

Regarding best interests, the trial court concluded that, despite the children's bond with respondents and that one child is placed with a relative, the children needed stability and permanence. The bond between the parents and children had suffered because of the continued substance abuse and respondents still lacked parenting skills. The children were having all of their needs met in their placement homes, where each would be adopted. The court also noted that

while a child being placed with a relative typically weighs against termination, the relative in question does not speak with either respondent because of threats made by respondent-father. The trial court found, therefore, that it was in the children's best interests to terminate respondent-mother's and respondent-father's parental rights. This appeal followed.

## II. BEST INTERESTS

Neither party disputes that the grounds for termination of parental rights were established by clear and convincing evidence with respect to all four children; rather, respondent-parents only argue that the trial court erred in determining that termination was in the children's best interests. We disagree.

"Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interest determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court should weigh all of the evidence available to it and may consider the following:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022), quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).]

The focus of a best-interest hearing is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

### A. DOCKET NO. 369082

Respondent-mother argues it was not in the children's best interests to terminate her parental rights because one of the children being placed with a relative should have outweighed the factors favoring termination, and the trial court did not consider the possibility of a

guardianship. After reviewing the record, we conclude that the trial court did not err in its best-interest analysis.

The record rebuffs respondent-mother's assertion that the trial court's analysis of the relative placement lacked specificity and was inadequate. CR was the only child in a relative placement with her maternal great aunt. When weighing the best-interest factors, the trial court acknowledged that CR was in a relative placement and that such a placement typically weighs against termination; however, in this case, the placement did not outweigh the other factors because respondent-parents and the relative placement were estranged. The relative placement was afraid of respondent-father because of his history of threatening and intimidating behavior. As a consequence of the relative placement's fear of respondent-father, the relative placement did not have a relationship with respondent-mother. We conclude that the trial court's consideration of the relative placement was sufficient to meet the requirements of *Olive/Metts*. See *id*.

Moreover, the trial court did not err in finding that the relative placement was outweighed by other factors favoring termination. In addition to the relative placement, the trial court noted that a bond existed between the children and respondent-mother, which weighed against termination. However, the remaining factors favored termination. The trial court considered that respondent-mother completed portions of her service plan, but she had not benefited enough from those services. Despite repeated orders from the court not to use drugs and to attend substance abuse treatment programs, respondent-mother had continued abusing cocaine, and had four positive drug tests in the month leading up to the termination hearing alone. She used cocaine while pregnant with JHG. She also had a substantial history of cocaine use before the initiation of this case. Respondent-father conceded that JG tested positive for cocaine at birth in 2017. The DHHS received hospital reports that two of her other children also tested positive for cocaine at birth. This demonstrates that she was not benefiting from her service plan. Moreover, the children were all doing well in their foster placements, which had each agreed to adopt the child in their care.

These children require extra care and attention that respondent-mother has shown she cannot provide. JG engaged in self-harm by bouncing his head against walls and had severe delays in speaking, toilet training, and eating solid foods. CR and KG demonstrated traits consistent with autism and were developmentally delayed. The three older children had been in foster care for two years, while JHG had been in foster care for over a year, which amounted to his entire life. Adoption gives these children the best chance at permanence and stability, which respondent-mother cannot provide. The trial court did not err in finding that the children's need for permanency and stability outweighed the relative placement in this case.

Respondent-mother also argues that the trial court failed to consider the possibility of a guardianship. However, the possibility of a guardianship was never raised in the trial court, therefore, we consider the issue forfeited. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 318; 885 NW2d 892 (2015). Even if it were to be considered, no potential guardians

have been identified.[2] The trial court did not err when it concluded it was in the children's best interests to terminate respondent-mother's parental rights.

## B. DOCKET NO. 369084

Respondent-father argues it was not in the children's best interests to terminate his parental rights because the trial court did not place enough weight on the bond he had with the children or that he had completed portions of his case service plan, and because one of the children was placed with a relative. After reviewing the record, we conclude that the trial court did not err in its best-interest analysis.[3]

The trial court did not clearly err when making its best-interest findings. In weighing the best-interest factors, the trial court acknowledged that CR was in a relative placement, a factor that weighed against termination. For the reasons already discussed in relation to respondent-mother, the trial court adequately considered CR's relative placement and concluded that this factor did not outweigh the factors favoring termination of respondent-father's parental rights. See *In re Olive/Metts Minors*, 297 Mich App at 43.

The trial court also considered that respondent-father had a bond with the children; however, that bond was diminished by his unavailability arising from drug use. Respondent-father repeatedly tested positive for a variety of drugs, including alcohol and marijuana. He tested positive for cocaine in the month before the termination hearing, but refused to admit to using cocaine. At least in relation to his marijuana use, respondent-father contends that he had a medical marijuana card permitting him to use the substance. However, this argument ignores that he continued to use marijuana after the trial court ordered him to stop using medical marijuana because his doctor advised that marijuana would interfere with his prescribed psychotropic medication. Respondent-father's continued drug use demonstrated that he did not benefit from his case service plan. Critically, respondent-father's substance abuse diminished his parenting skills. Several of the children had severe developmental delays that required elevated supervision and care that could not be provided by intoxicated parents.

---

[2] We note that respondent-father also argues that the trial court erred by failing to consider the possibility of a guardianship. For the same reasons we conclude respondent-mother is not entitled to relief, respondent-father is also not entitled to relief.

[3] In the substance of his best-interest argument, respondent-father appears to make several cursory arguments regarding the statutory grounds to terminate his parental rights, such as his assertion that use of medical marijuana is not a lawful basis to terminate parental rights and that the trial court actually terminated respondent-father's parental rights because of the aggressive behavior he displayed toward caseworkers. To the extent that these arguments present a substantive issue separate from the trial court's best-interest determination, they are waived because respondent-father failed to properly present the issues in his statement of questions presented. See *In re BKD*, 246 Mich App 212, 218; 631 NW2d 353 (2001) ("Accordingly, appellate review of this issue is waived because respondent failed to properly present this issue in his statement of questions presented.").

The trial court explained that one overriding factor weighing in favor of termination was respondent-father's lack of parenting skills. The record supports the trial court's finding. The trial court exercised jurisdiction over three of the four children after they were found in deplorable conditions and displayed developmental delays caused by poor parenting skills and improper supervision. The trial court afforded respondent-father approximately two years to make meaningful, consistent progress in his case service plan, but he failed to demonstrate meaningful progress in his parenting ability.

To respondent-father's credit, he and respondent-mother moved into a house that the DHHS deemed appropriate for the children. However, respondent-father did not otherwise demonstrate improved parenting ability. As previously stated, respondent-father continued to abuse substances that interfered with his ability to care for his children with special needs. Respondent-father also consistently engaged in aggressive and hostile emotional outbursts. From August to November 2022, respondent-father's parenting time was suspended because of the aggressive and angry behavior he exhibited toward caseworkers in front of JG. This hostile behavior was not limited to caseworkers. The relative placement was fearful of respondent-father because of threats he made toward her family. His persistent aggressive behavior demonstrated that he had difficulty restraining his intense, unstable emotions. This posed a risk to the children. Moreover, despite service providers and educators indicating that JG, CR, and KG all exhibited traits of autistic children and were developmentally delayed, respondent-father only acknowledged that JG was autistic. The record supports that respondent-father lacked the parenting skills necessary to care for his children with severe developmental delays.

Moreover, the children's need for stability, permanency, and finality weighed in favor of termination. The children resided with respective foster and relative placements who wished to adopt them. JG, CR, and KG were in their respective placements for two years, while JHG had been in foster care for his whole life. Each child was doing well in their respective placements. These placements offered each child stability, permanency, and finality that respondent-father could not offer.

On this record, the trial court did not clearly err when it found that termination of respondent-father's parental rights was in each of the children's best interests. The trial court properly weighed the appropriate factors when considering JG, CR, KG, and JHG's best interests, and a preponderance of the evidence weighed in favor of terminating respondent-father's parental rights.

Affirmed in both dockets.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado

-6-