*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LONG, Minors.

UNPUBLISHED
June 18, 2026
10:14 AM

No. 378088
Wayne Circuit Court
Family Division
LC No. 2024-001344-NA

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor children, CBL, LAL, and MLFL. On appeal, respondent challenges the trial court's best-interest determination. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from respondent's sexual abuse of AS, who is the half-sister of CBL, LAL, and MLFL. Respondent cohabited with nonrespondent-mother, CBL, LAL, MLFL, and AS. AS regarded respondent as her father. AS is and was at the time of the assaults cognitively impaired and developmentally delayed. Commencing when AS was 11 years old, respondent engaged in inappropriate sexual contact with AS while nonrespondent-mother was away at work. On one occasion, respondent summoned AS upstairs and struck her in the arm. Respondent digitally penetrated AS's vagina on one occasion and compelled AS to touch herself on five occasions.

Following AS's disclosure of respondent's abuse to her maternal aunt in April 2024, Child Protective Services (CPS) was notified, and AS was transported to the hospital. AS subsequently participated in a Kids-TALK forensic interview, during which she described the abuse. In July 2024, the Department of Health and Human Services (DHHS) petitioned to terminate respondent's parental rights to CBL, LAL, and MLFL at the initial disposition. The children remained in the care of nonrespondent-mother.

A combined adjudication trial and termination hearing occurred in May 2025. The trial court permitted admission of AS's statements to the forensic interviewer through the interviewer's

testimony pursuant to MCR 3.972(C)(2). Respondent denied ever engaging in inappropriate contact with AS and contended that AS's testimony was the result of coaching by her maternal aunt. Nonrespondent-mother similarly testified that AS was "easily influenced" and "was coached to say false things" against respondent. The trial court concluded that grounds for jurisdiction existed under MCL 712A.2(b), and that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (sibling suffered sexual abuse caused by the parent's act), (g) (failure to provide care despite financial ability), (j) (reasonable likelihood of harm to children if returned to parent's home), (k)(ii) (abuse of sibling involving criminal sexual conduct and reasonable likelihood of harm if returned to parent's care), and (k)(ix) (abuse including sexual abuse and reasonable likelihood of harm if returned to parent's care).

A best-interests hearing was conducted in August 2025. Katrina Williams, a CPS treatment specialist, testified regarding the relationship between respondent, his children and his parenting time. Andrew Brooks, a forensic family clinician, opined that respondent "did not take responsibility for his actions that led to court involvement." Both nonrespondent-mother and respondent testified that it was in the children's best interests for respondent's parental rights not to be terminated. Respondent's brother, who supervised respondent's parenting time, testified that respondent's behavior was appropriate and demonstrated "good parenting." The trial court found that it was in the best interests of CBL, LAL, and MLFL to terminate respondent's parental rights. This appeal followed.

## II. BEST INTERESTS

Respondent contends that the trial court committed reversible error in terminating his parental rights, asserting that such termination was not in the best interests of CBL, LAL, and MLFL. Respondent maintains that the significant emotional bond between himself and the minor children should have precluded the termination of his parental rights.

We review the trial court's findings that termination is in a child's best interests for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (quotation marks and citation omitted).

It is axiomatic in Michigan jurisprudence that, once a statutory ground for termination has been established, the trial court must conduct a distinct, evidence-based inquiry into the child's best interests. See *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This best-interests analysis, governed by the preponderance standard, requires consideration of a comprehensive spectrum of factors, including but not limited to: the nature and strength of the parent-child bond; the parent's demonstrated parenting capacity; the child's interest in permanency, stability, and finality; and the relative advantages of foster care. *Olive/Metts*, 297 Mich App at 41-42. Additional salient considerations encompass the parent's history of domestic violence, compliance with case service plans, visitation history, the child's well-being while in care, and adoption prospects. *White*, 303 Mich App at 714. Although relative placement militates against termination, it is not dispositive; the trial court retains broad discretion to terminate parental rights notwithstanding relative placement if the child's best interests so dictate. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022).

The best-interests determination remains child-centric, requiring the factfinder to weigh all evidence with the child's welfare as the paramount consideration. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

The record discloses several salient considerations weighing against the termination of respondent's parental rights to CBL, LAL, and MLFL. First, the existence of a significant and acknowledged parental bond is undisputed. See *Olive/Metts*, 297 Mich App at 42. Second, respondent consistently exhibited appropriate conduct and meaningful engagement during parenting time. See *White*, 303 Mich App at 714. Third, the children's placement with their nonrespondent mother constitutes a factor that militates against termination. See *Atchley*, 341 Mich App at 347. The trial court properly articulated its consideration of these countervailing factors on the record.

Nonetheless, the trial court's conclusion that termination was in the best interests of CBL, LAL, and MLFL is unassailable given the gravity of respondent's deficiencies relative to his fitness as a parent. Most notably, respondent's commission of sexual abuse against AS, for whom he stood *in loco parentis*, constitutes highly probative evidence of unfitness. Michigan precedent endorses the doctrine of anticipatory neglect, whereby a parent's treatment of one child is deemed probative of potential treatment of other children. *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). This doctrine is appropriately imported into the best-interest calculus. *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Accordingly, respondent's abuse of AS provides a compelling evidentiary basis for the trial court's risk assessment regarding CBL, LAL, and MLFL. Furthermore, respondent's admission to Brooks of "arguments and physical violence" with nonrespondent mother—even in the face of denials of domestic violence—further supports the trial court's determination. *White*, 303 Mich App at 714 (noting the importance of giving "strong weight to the children's need for safety and stability").

Respondent contends that the trial court erred by attributing probative value to the abuse of AS in assessing risk to the other children. However, our Courts have long recognized that the inference of anticipatory neglect is subject to diminution where there exist material distinctions among the children, including disparities in age or medical condition. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020); *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014). Nevertheless, the precedent limiting the doctrine's applicability is distinguishable. In *Kellogg*, the affected children exhibited disparate trauma histories and behavioral or mental health characteristics. *Id*. at 260-261. In *LaFrance*, the respondent's inability to care for a medically fragile child was not indicative of her capacity to parent siblings lacking such vulnerabilities. *Id*. at 731.

Although the doctrine of anticipatory neglect is not automatically applicable in cases involving abuse of a nonbiological child, this Court in *Mota* recognized its extension where the respondent has assumed a parental role with respect to the victim. *Mota*, 334 Mich App at 323. Here, respondent's status as a father figure to AS is uncontested, and the record establishes a robust parental bond. This bond, however, did not prevent respondent from perpetrating sexual abuse against AS. The evidence further demonstrates that AS's developmental disabilities left her especially vulnerable to respondent's manipulation, including inducements by promise of gifts. The trial court correctly observed that LAL's developmental disabilities, as well as the tender age

and susceptibility of CBL and MLFL, rendered them similarly at risk.  Thus, the trial court's determination that respondent's repeated abuse of AS constitutes a grave threat to the safety and well-being of the remaining children is supported by the record. *Id.* at 323.

Although respondent ostensibly limits his challenge to the best-interest determination, he also attacks the trial court's factual finding regarding the occurrence of abuse, grounding his argument almost exclusively in appellate counsel's interpretation of AS's conduct during visitation.  The trial court unequivocally rejected such unsubstantiated and speculative interpretations of the facts, instead finding the testimony of AS regarding respondent's physical and sexual abuse to be highly credible and persuasive.  The trial court further noted that, given AS's cognitive delays, successful coaching to fabricate allegations in a forensic interview was unlikely.  This Court must afford substantial deference to the trial court's unique position to evaluate witness credibility. *Miller*, 347 Mich App at 425.  The trial court's reliance on the evidence of sexual abuse in rendering its best-interest finding was both proper and free from clear error. *Payne/Pumphrey/Fortson*, 311 Mich App at 63.

The trial court's determination that termination of respondent's parental rights serves the children's best interests is fully supported by the record and therefore does not amount to clear error. *White*, 303 Mich App at 713.

Affirmed.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock